UNITED STATES, Appellee

v.

Joseph P. SCHWEITZER, Captain
U.S. Marine Corps, Appellant

No. 08-0746

Crim. App. No. 200000755

United States Court of Appeals for the Armed Forces

Argued June 24, 2009

Decided August 31, 2009

STUCKY, J., delivered the opinion of the Court, in which
ERDMANN, J., GOODWIN, J., and COX, and GIERKE, S.JJ., joined.
EFFRON, C.J., and BAKER and RYAN, JJ., did not participate.

Counsel

For Appellant:  Mary T. Hall, Esq. (argued); Lieutenant Heather
L. Cassidy, JAGC, USN (on brief).


For Appellee:  Major Elizabeth A. Harvey, USMC (argued); Colonel
Louis J. Puleo, USMC, and Brian K. Keller, Esq. (on brief).


Military Judges:  A. W. Keller and R. E. Nunley


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.[1]

Appellant was one of three electronic countermeasures officers aboard a Marine Corps aircraft piloted by Captain (Capt) Richard J. Ashby on February 3, 1998, that severed two weight-bearing suspension cables of the Alpe Cermis cable car system, near Cavalese, Italy, causing one of the system's gondolas to plummet to the ground, killing its twenty civilian passengers. As a result of Appellant's subsequent actions in destroying a videotape taken during that flight, Appellant pled guilty to two specifications of conduct unbecoming an officer in violation of Article 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 933 (1994).

We granted review of four issues in this case: (1) whether Appellant's unconditional guilty plea preserved for appeal his motion to dismiss alleging the convening authority was the accuser; (2) whether Appellant's guilty plea to conduct unbecoming an officer by obstructing justice is provident when it concerned the obstruction of a foreign criminal

---

[1] Chief Judge Andrew S. Effron, Judge James E. Baker, and Judge Margaret A. Ryan recused themselves from this case and did not participate in this opinion. Judge Joseph R. Goodwin, Chief Judge of the United States District Court for the Southern District of West Virginia, sat by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 U.S.C. § 942(f) (2006). Senior Judge Walter T. Cox III, and Senior Judge H. F. "Sparky" Gierke participated in this case pursuant to Article 142(e)(1)(A)(iii), UCMJ, 10 U.S.C. § 942(e)(1)(A)(iii) (2006).

investigation; (3) whether this Court's decision in United States v. Allende, 66 M.J. 142 (C.A.A.F. 2008), unconstitutionally shifted the burden to the defense to establish that a due process violation in the post-trial processing of his case was not harmless beyond a reasonable doubt; and (4) whether the lower court abused its discretion by failing to grant sentence relief after admitting "gross negligence" in failing to provide expeditious review of Appellant's appeal.  For the reasons that follow, we affirm.

                                I.

During the ill-fated flight, Appellant was stationed in the front cockpit with Capt Ashby.  He used Capt Ashby's video camera to record scenic footage of the Italian Alps during the flight.  The other two Marine Corps officers were in the rear cockpit.

Because of damage the aircraft suffered as a result of severing the suspension cables, Capt Ashby was forced to make a "no flaps, no slats arrested emergency landing" at a North Atlantic Treaty Organization (NATO) base in Aviano, Italy.  Due to the danger of fire and explosion, and in compliance with applicable procedures, the two Marine Corps officers in the rear cockpit immediately left the plane.  However, before exiting themselves, Appellant said to Capt Ashby, "Let's take the tape." Capt Ashby agreed and substituted a blank videotape for the

videotape recorded during the flight.  Capt Ashby then took the videotape containing the flight recording with him when he exited the plane.  The two officers left the video recorder with the blank tape in the plane, knowing that it would be seized by personnel investigating the mishap.

Shortly after the incident, then-Lieutenant General (LtGen) Peter Pace, the Commander United States Marine Forces Atlantic, and Commander, United States Marine Forces Europe, convened a command investigation board to determine the cause of the incident, and the Italian Government began a formal criminal investigation that included the appointment of counsel for Appellant and was closely monitored by United States military investigators.  After Appellant and Capt Ashby learned of the Italian criminal investigation, they solicited the advice of a third member of the flight, Capt Seagraves, on what to do with the tape.  Capt Seagraves advised them to "get rid of it." After this conversation, Appellant asked Capt Ashby to give him the videotape so he could destroy it.  Appellant threw the videotape into a bonfire behind a bar, knowing that Italian and United States military criminal investigators would have wanted to view it.

On March 24, 1998, Gunnery Sergeant (GySgt) Michael J. Ciarlo preferred charges against Appellant and Capt Ashby, including twenty specifications alleging involuntary

manslaughter for each of the twenty gondola passengers who died in the incident. LtGen Pace referred these charges to a general court-martial, on July 10, 1998, pursuant to his role as convening authority.

On August 28, 1998, GySgt Ciarlo preferred one additional charge composed of two specifications against both Capt Ashby and Appellant: conduct unbecoming an officer by conspiring with each other to obstruct justice by secreting a videotape from the cockpit and destroying it; and obstruction of justice based on these same acts, in violation of Article 133, UCMJ. On September 21, 1998, LtGen Pace referred the additional charge to general court-martial to be tried with the charges referred on July 10, 1998. Capt Ashby was acquitted of all of the initial charges, but as he had refused to consent to joinder of the additional and initial charges, he was tried and convicted separately of the conduct unbecoming offenses. As a result of Capt Ashby's acquittal of the initial charges, the convening authority withdrew all charges against Appellant, except for the conduct unbecoming specifications.

Pursuant to a pretrial agreement requiring the convening authority to disapprove any adjudged confinement, Appellant pled guilty, by exceptions and substitutions, to the charge and its two specifications. The military judge accepted Appellant's pleas and officer members sentenced Appellant to a dismissal.

The convening authority approved the findings and sentence. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) remanded for either a hearing to determine whether the staff judge advocate was disqualified or, in the alternative, for a new staff judge advocate's recommendation (SJAR) and a new convening authority action. United States v. Schweitzer (Schweitzer I), 2007 CCA LEXIS 164, at *99-*100, 2007 WL 1704165, at *33-*34 (N-M. Ct. Crim. App. May 10, 2007) (unpublished). After a new SJAR by a different SJA, the convening authority again approved the adjudged sentence, and the CCA affirmed in a second opinion. United States v. Schweitzer (Schweitzer II), No. 200000755, slip op. at 2, 4 (N-M. Ct. Crim. App. Jun. 5, 2008) (unpublished).

II.

At trial, both Appellant and Capt Ashby moved to dismiss the charges, alleging that LtGen Pace was an "accuser" under Article 1(9), UCMJ, 10 U.S.C. § 801(9) (1994),[2] such as to disqualify him from referring the charges to a court-martial under Article 22, UCMJ, 10 U.S.C. § 822 (1994). The military

---

[2] It was asserted that LtGen Pace was either a type-two accuser ("a person who directs that charges nominally be signed and sworn to by another") or a type-three accuser (a "person who has an interest other than an official interest in the prosecution of the accused"). Article 1(9), UCMJ.

6

judge ruled, during a joint session, that LtGen Pace was not an accuser in these cases.

On appeal before the CCA, Appellant alleged that the military judge erred by refusing to grant the motion to dismiss. The CCA held that Appellant's unconditional guilty plea waived the issue. Schweitzer I, 2007 CCA LEXIS 164, at *10-*11, 2007 WL 1704165, at *3. Citing Rule for Courts-Martial (R.C.M.) 910(j), Appellant asserts before this Court that his guilty plea did not waive the issue, as a right to an impartial convening authority is a "bedrock of military due process."

R.C.M. 910(j) provides a bright-line rule -- an unconditional guilty plea "which results in a finding of guilty waives any objection, whether or not previously raised, insofar as the objection relates to the factual issue of guilt of the offense(s) to which the plea was made." "The point . . . is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." Menna v. New York, 423 U.S. 61, 62 n.2 (1975).

Objections that do not relate to factual issues of guilt are not covered by this bright-line rule, but the general principle still applies: An unconditional guilty plea generally "waives all defects which are neither jurisdictional nor a deprivation of due process of law." United States v. Rehorn, 9

C.M.A. 487, 488-89, 26 C.M.R. 267, 268-69 (1958) (finding a guilty plea waived failure to provide an accused with certified counsel for his Article 32, UCMJ, hearing).  Nevertheless this Court has found on occasion that an unconditional guilty plea by itself does not waive an objection on appeal to a nonfactual issue.  See, e.g., United States v. Pauling, 60 M.J. 91, 94 (C.A.A.F. 2004) (unconditional guilty plea does not waive a multiplicity objection if the specifications are "facially duplicative"); United States v. Pratchard, 61 M.J. 279, 280 (C.A.A.F. 2005) (guilty plea does not waive speedy trial objection under Article 10, UCMJ, 10 U.S.C. § 810 (2000) (citing United States v. Mizgala, 61 M.J. 122 (C.A.A.F. 2005))); United States v. Boyett, 42 M.J. 150, 152 (C.A.A.F. 1995) ("guilty plea does not waive the defect of a specification that fails to state an offense").

As long as the individual who convenes the court-martial is one of the persons described by statute as having such authority, see Articles 22(a) or 23(a), UCMJ, the disqualification of the convening authority under Articles 22(b) or 23(b), UCMJ, for being an accuser under Article 1(9), UCMJ, does not deprive the court-martial of jurisdiction.  United States v. Ridley, 22 M.J. 43, 47-48 (C.M.A. 1986); see also United States v. Shiner, 40 M.J. 155, 157 (C.M.A. 1994); United States v. Jeter, 35 M.J. 442, 446-47 (C.M.A. 1992).  LtGen Pace

was authorized under Article 22(a), UCMJ, to convene Appellant's court-martial. Therefore, any error would be nonjurisdictional.

After losing his motion at trial to disqualify LtGen Pace, Appellant pled guilty pursuant to a pretrial agreement that he had negotiated with the one and the same LtGen Pace. As part of Appellant's providence inquiry, the military judge stated:

> Captain Schweitzer, by your pleas of guilty, you also give up your right to appeal the decisions, not only that I made, but the decisions that were made by [the military judge] during the joint motion session of this trial. By your plea of guilty, you waive all motions with the exception of motions regarding multiplicity; motions involving jurisdictional issues; and, as far as the guilty plea is concerned, unlawful command influence, selective prosecution, or ineffectiveness of counsel. All other motions are waived."

Appellant explicitly acknowledged understanding this consequence of his guilty plea and agreed to give up his right to appeal those issues. Under these circumstances, Appellant waived his objection to LtGen Pace acting as the convening authority in his case, and it may not be raised on appeal. See United States v. Gladue, 67 M.J. 311, 313 (C.A.A.F. 2009).

### III.

The specifications upon which Appellant was tried alleged conduct unbecoming an officer by (1) conspiring to obstruct justice by endeavoring to impede an investigation by removing the recorded videotape from the cockpit of the aircraft and soliciting the support of another officer in secreting and/or

9

destroying the videotape, and (2) obstructing justice by endeavoring to impede an investigation by secreting or destroying the videotape.  In accordance with his pretrial agreement, Appellant pled guilty to both specifications by exceptions and substitutions.  The major changes involved amending the word "investigation" in both specifications to read "a criminal investigation by Italian authorities."  Appellant now claims his pleas were improvident, asserting that there is no basis in military jurisprudence to find that impeding a foreign criminal investigation is conduct unbecoming an officer, and Appellant was not on notice that impeding "Italian justice could form the basis for a violation of Article 133."  We disagree.

Once a military judge has accepted an accused's guilty pleas and entered findings of guilty, this Court will not set them aside unless we find a substantial basis in law or fact for questioning the plea.  United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008).

Article 133, UCMJ, provides as follows:  "Any commissioned officer, cadet, or midshipman who is convicted of conduct unbecoming an officer and a gentleman shall be punished as a court-martial may direct."  There are two elements to this offense:

> (1) That the accused did or omitted to do certain acts; and
>
> (2) That, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.

United States v. Forney, 67 M.J. 271, 278 (C.A.A.F. 2009) (quoting Manual for Courts-Martial, United States pt. IV, para. 59.b (2008 ed.).

An officer's conduct need not violate other provisions of the UCMJ or even be otherwise criminal to violate Article 133, UCMJ.  The gravamen of the offense is that the officer's conduct disgraces him personally or brings dishonor to the military profession such as to affect "his fitness to command the obedience of his subordinates so as to successfully complete the military mission."  Id. at 275.  "'Clearly, then, the appropriate standard for assessing criminality under Article 133 is whether the conduct or act charged is dishonorable and compromising as hereinbefore spelled out -- this notwithstanding whether or not the act otherwise amounts to a crime.'"  Id. (quoting United States v. Giordano, 15 C.M.A. 163, 168, 35 C.M.R. 135, 140 (1964)).

Appellant admitted knowing that he was obstructing justice by destroying a videotape he knew would have been of significant interest to Italian criminal authorities investigating the death of twenty persons, and that such conduct was wrong.  His

11

admissions were sufficient to establish that his conduct was unbecoming an officer -- it was dishonorable, disgraced him personally, and compromised his fitness to command the obedience of his subordinates so as to successfully complete the military mission.  Furthermore, there is nothing in the record to suggest that Appellant was not on notice that such conduct was unbecoming an officer, and he never made such a claim at trial. There is no substantial basis in law or fact for setting aside Appellant's guilty pleas.  Inabinette, 66 M.J. at 322; United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991).

IV.

The CCA held, sua sponte, that the eight-year delay from the announcement of Appellant's sentence until the CCA issued its original opinion in this case denied Appellant his due process right to speedy review and appeal because it was caused by "gross negligence and lack of institutional vigilance," and "tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." Schweitzer I, 2007 CCA LEXIS 164, at *96-*97, 2007 WL 1704165, at *32.  Nevertheless, the CCA found this error harmless beyond a reasonable doubt based on Appellant's guilty pleas, the approved sentence, Appellant's failure to assert the denial of speedy review and appeal, and Appellant's failure to prevail on appeal.  Id. at *97-*98, 2007 WL 1704165, at *33.

12

Appellant asserted that the delay had caused him difficulty in finding adequate employment. His affidavit stated that he has averaged less than $35,000 a year in annual income since he began his appellate leave, even though Appellant earned a master of business administrative degree in 2004, and the positions for which Appellant interviewed paid between $79,000 and $95,000. The CCA held that Appellant's affidavit amounted to speculation that "falls far short of providing sufficient detail to permit the Government to reasonably address the appellant's claims." Schweitzer II, slip op. at 4 (citing United States v. Allende, 66 M.J. 142 (C.A.A.F. 2008)). The CCA affirmed its previous decision that the egregious post-trial delay was harmless beyond a reasonable doubt. Id.

Appellant complains that this Court's decision in Allende improperly shifted the burden to Appellant to establish that he was harmed by the delay. This argument was rejected in our decision in United States v. Bush, 68 M.J. 96, __ (15) (C.A.A.F. 2009), which is controlling.

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." United States v. Moreno, 63 M.J. 129, 135 (C.A.A.F. 2006). To rebut a due process violation "the Government must show that this error was harmless beyond a reasonable doubt." United States v. Gosser, 64 M.J. 93, 99 (C.A.A.F. 2006) (citations omitted).

13

In Allende, the appellant asserted that he had lost employment opportunities when he was unable to show potential employers a DD-214, Certificate of Release or Discharge from Active Duty. We assumed the delay amounted to a due process violation but concluded that the error was harmless beyond a reasonable doubt. We noted that the appellant had not provided documentation from potential employers regarding their employment practices, nor had he otherwise demonstrated a valid reason for failing to do so. Allende, 66 M.J. at 145.

This Court did not shift the burden to the appellant to establish that he was harmed by the delay in the review and appeal of his case. The burden remained on the Government to prove the constitutional error was harmless beyond a reasonable doubt under the totality of the circumstances. The Court merely recognized that where the appellant has not suffered any prejudice under the fourth prong of the Moreno speedy review and appeal test -- ongoing prejudice in the form of oppressive incarceration, undue anxiety, or the impairment of the ability to prevail in a retrial -- "the Government may more readily demonstrate that any error is harmless beyond a reasonable doubt." Bush, 68 M.J. at __ (19).

Appellant's situation is the same. There is no evidence he suffered any prejudice as defined in prong four of Moreno. 63 M.J. at 138-41. The CCA employed the correct standard -- the

14

totality of the circumstances -- in determining that the due process violation was harmless beyond a reasonable doubt. Schweitzer I, 2007 CCA LEXIS 164, at *97, 2007 WL 1704165, at *33.

V.

Appellant's final claim is that the CCA abused its discretion by failing to grant him discretionary relief under Article 66(c), UCMJ, because of the gross negligence in processing the review and appeal of his case.  He further alleges that, after promising to do so in Schweitzer I, the CCA failed to consider discretionary relief in Schweitzer II.

A Court of Criminal Appeals "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."  Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000).  Although deeply divided, this Court has held that Courts of Criminal Appeals have "authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)[, 10 U.S.C. § 859(a) (2000),] if it deems relief appropriate under the circumstances."  United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F. 2002) (quoting United States v. Collazo, 53 M.J. 721, 727 (A. Ct. Crim. App. 2000).  We further held that "the court below was required to determine what

15

findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay." Id.

In Schweitzer I, the CCA stated that, after the remand, it would consider whether discretionary relief was warranted for the post-trial delay. 2007 CCA LEXIS 164, at *98, 2007 WL 1704165, at *33. Appellant complains that the CCA should have granted him discretionary relief and there is no evidence in Schweitzer II that it even considered it.

In the absence of evidence to the contrary, judges of the Courts of Criminal Appeals are presumed to know the law and to follow it. United States v. Mason, 45 M.J. 483, 484 (C.A.A.F. 1997). The CCA acknowledged in Schweitzer I its duty to consider discretionary relief when the case returned from remand. 2007 CCA LEXIS 164, at *98, 2007 WL 1704165, at *33. We find no reason to doubt that the panel considered discretionary relief before affirming Appellant's sentence.[3] Furthermore, after considering the totality of circumstances, we conclude that the CCA did not abuse its discretion in not granting discretionary relief.

---

[3] Two of the three judges who agreed to perform discretionary review when the case returned from remand, including the judge who wrote Schweitzer I, were on the panel that decided Schweitzer II.

16

## VI.  Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.