**UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Anthony J. LIVINGSTONE**
**Cadet, U.S. Coast Guard**

**CGCMG 0352**
**Docket No. 1448**

**5 October 2018**

| | |
|---|---|
| Military Judge: | CAPT Benes Z. Aldana, USCG |
| Appellate Defense Counsel: | Ms. Terri R. Zimmermann, Esq. (argued) |
| | Mr. Jack B. Zimmermann, Esq. |
| | LCDR Jason W. Roberts, USCG |
| Appellate Government Counsel: | LCDR Stephen Miros, USCG (argued) |
| | LCDR Tereza Z. Ohley, USCG |
| | Mr. Stephen P. McCleary, Esq. |
| Appellate Special Victims' Counsel: | LCDR Elizabeth A. Hutton, USCG |
| | LCDR Jeremy A. Weiss, USCG |
| | LT Nathaniel L. Eichler, USCG |

**BEFORE**
**McCLELLAND, BRUCE & BRUBAKER**
Appellate Military Judges

BRUBAKER, Judge:

Members sitting as a general court-martial convicted Appellant, contrary to his pleas, of two specifications of sexual assault, one specification of extortion (which the military judge later conditionally dismissed), and two specifications of conduct unbecoming an officer and a gentleman in violation of Articles 120, 127, and 133, Uniform Code of Military Justice (UCMJ). The members sentenced Appellant to dismissal and confinement for eight years, which the Convening Authority approved.

Appellant now asserts the following:

(1) The evidence was factually insufficient to support one of his two sexual assault convictions;

(2) The military judge abused his discretion when ruling on the admissibility of evidence under Military Rule of Evidence (M.R.E.) 412;

(3) The evidence was legally and factually insufficient to support both convictions for conduct unbecoming an officer and a gentleman;

(4) The military judge reversibly erred by failing to instruct on *mens rea* with regard to the conduct unbecoming charges;

(5) The prosecutor committed misconduct when she undertook a discovery obligation she would not normally have and failed to exercise due diligence in executing that obligation, to Appellant's prejudice; and

(6) Participation by a Special Victims' Counsel amounted to private counsel providing unauthorized assistance to the trial counsel, to Appellant's prejudice.[1]

We specified an additional issue:

The Manual for Courts-Martial provides that whenever an offense charged under Article 133 "is the same as a specific offense set forth in [the MCM], the elements of proof are the same as those set forth in the paragraph which treats that specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and gentleman." Manual for Courts-Martial, United States (2012 ed.), Pt. IV, ¶ 59.c.(2). Applying this, were the charged offenses under Article 133 "the same" as the also-charged extortion under Article 127, Uniform Code of Military Justice? If so, did the specifications under Charge III state offenses and did the military judge properly instruct the members on the elements of the offenses? *Cf. United States v. Reese*, 76 M.J. 297, 302–303 (C.A.A.F. 2017).

We heard oral argument on this and issue (4) pertaining to the *mens rea* of Article 133.

We ultimately need not answer whether the Article 133 offenses were "the same as a specific offense," MCM, Pt. IV, ¶ 59.c.(2) because if they were, they were improperly charged and instructed on and if they were not, there is legally insufficient evidence independent of a specific offense to sustain the convictions. We thus set aside the Article 133 convictions. This

---

[1] We have considered issues (5) and (6), raised personally by Appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), but reject them without further discussion.

moots the *mens rea* issue. After reviving a conditionally-dismissed extortion specification, we otherwise affirm the findings and reassess the sentence.

## Facts

Appellant's convictions center around his relationships with two fellow cadets at the United States Coast Guard Academy, whom we will refer to as Cadet A and Cadet B.

### *Cadet A*

Cadet A and Appellant met and had consensual sex when she was a fourth-class (first year) cadet and he a third class (second year) cadet. Cadet A later texted Appellant that while she "really liked him," she was nervous about getting into trouble for violating cadet rules about relationships between fourth-class cadets and upperclassmen, so she wanted to end the relationship until she became an upperclassman. (R. at 399.)

Appellant responded it was not necessary to end their relationship and was adamant that they talk about it in person. Cadet A told him she would not change her mind but acquiesced to going to his room to discuss it in person. As she was again explaining her reasons for suspending their relationship, he tried to hug her but she held her hands up and said "no." Appellant then grabbed the back of her neck and tried to kiss her but she turned her head away. He then threw her onto a bed and, as she attempted to keep her legs together and said "no," he pulled down her shorts and underwear, pried her legs apart, and penetrated her vagina with his penis.

Cadet A did not initially report the incident, instead avoiding contact with Appellant to the extent she could. Appellant, however, began to send Cadet A Snapchat messages with photographs of her studying or otherwise interacting with upperclassmen and captions to the effect of "looks like frat[ernization] to me." (R. at 414.) Cadet A testified that this made her feel threatened and that he was "collecting things that I had done wrong to use against me in the future." *Id.* She told him to stop and eventually blocked him from sending messages to her via Snapchat.

*Cadet B*

Appellant and Cadet B were classmates. They developed a very close friendship that included on-and-off dating and frequent consensual sex, both when they considered themselves to be in a dating relationship and not.

As they entered their final year at the Academy, Appellant informed Cadet B that he was dating someone else and that when he saw her on a holiday weekend in a couple of months, he planned to make it serious, meaning he would be sexually exclusive with his girlfriend. Cadet B conceded that this made her a little jealous, but ultimately decided that their friendship was more important and continued to spend time with him. Also, although at first Cadet B thought she and Appellant should just stop having sex immediately, she agreed to continue to have sex with him until the holiday weekend.

While they were still in this status, Appellant invited Cadet B to his room to "cuddle," which Cadet B interpreted to mean lying together holding one another. She ultimately agreed but warned him she was "so tired" and "dead." (Prosecution Ex. 2 at 1.) She went to his room and, dressed in shorts and a t-shirt, fell asleep on his bed "cuddling" with him lying behind her. (R. at 614.)

Some time later, she was awakened by Appellant putting his hand down the front of her pants. Annoyed and just wanting to sleep, she pulled his hand down and told him to stop. He tried again with the same result. On a third try, she again pulled his hand out and told him to stop and said "don't you have a girlfriend" in an effort to deter him. (R. at 616.) He then said "fine" and lay still. (R. at 618.) But after falling back asleep, she awakened to the feeling of pressure and as she lay there still and half asleep, Appellant penetrated her vagina with his penis.

Like Cadet A, Cadet B did not immediately report the assault. Appellant initially was contrite, texting that he felt "horrible" and that he hoped "no one ever hurts you, deceive[s] you, and disrespect[s] you like i have." (Prosecution Ex. 8 at 1). After Cadet B accused him of being a rapist and that she was thinking of reporting him, he replied:

> Everyday i walk by you, or even one of your friends, i feel a pit in my stomach, i hate myself. Your words have cut me and i feel incredibly terrible shame. I deserve this. I will continue to avoid you and continue to leave you alone. . . . My hands started shaking when you sent me this message this morning because i know, should you make an unrestricted report, my career is over. If this is what you want then I understand. I hope you can have peace again one day because i never will knowing how ive hurt you. I hope that somehow i am able to finish my time here if you'll allow it.

(Prosecution Ex. 8 at 1.)

After Cadet B told Appellant that his career was of no concern to her and gave him an ultimatum to leave the Academy or she would report him, his tone changed. In a lengthy text message, he now denied sexually assaulting her and said that dropping out of the Academy was not an option. He said that if she filed an unrestricted report, he would "fight it with every ounce of [his] being." (Prosecution Ex. 10 at 4.) Characterizing the case as a "he said she said matter given that there are no witnesses and no evidence," he indicated it would ultimately be dropped, but the investigation would reveal she had fraternized with a Coast Guard officer and they both would receive nonjudicial punishment for having sex in the barracks. He said that the "embarrassing details of our sex life and every dirty gross bit of our relationship will be dug up and publicized" and further threatened to make a counterclaim that she had sexually assaulted him on an unrelated occasion. *Id.*

### Factual Sufficiency of Sexual Assault Conviction

Appellant asserts that the evidence supporting his conviction for sexually assaulting Cadet B is factually insufficient. We disagree.

We review factual sufficiency *de novo*. Article 66(c), UCMJ; *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt. *Id.* Applying this test, we are convinced of Appellant's guilt beyond a reasonable doubt and thus reject this asserted error.

**Article 133 Offenses**

We turn to Appellant's convictions under Article 133, UCMJ.  Explaining our concerns with these convictions requires some background and history.

Conduct unbecoming an officer and a gentleman is a centuries-old offense focused on preserving the ability of officers to lead and to command.  *Parker v. Levy*, 417 U.S. 733, 743–45 (1974); *United States v. Schweitzer*, 68 M.J. 133, 137 (C.A.A.F. 2009).  Currently codified in Article 133, UCMJ, it is written in the broadest of terms: "Any commissioned officer, cadet, or midshipman who is convicted of conduct unbecoming an officer and a gentleman shall be punished as a court-martial may direct."

Yet while seemingly vague, Article 133 survives constitutional challenges not only because of the unique needs of the military, but because customs and usages of the services narrow its breadth and provide it context and meaning.  *Parker*, 417 U.S. at 746–47.  The Manual for Courts-Martial (MCM) clarifies that the article prohibits:

> action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer. . . .  Not everyone is or can be expected to meet unrealistically high moral standards, but there is a limit of tolerance based on customs of the service and military necessity below which the personal standards of an officer, cadet, or midshipman cannot fall without seriously compromising the person's standing . . . .

MCM, United States (2012 ed.), Pt. IV, ¶ 59.c.(2).[2]

Military courts have emphasized that "not every delict or misstep warrants punishment under Article 133.  In general, it must be so disgraceful as to render an officer unfit for service." *United States v. Guaglione*, 27 M.J. 268, 271 (C.M.A. 1988).  In other words:

> [I]f the act, though ungentlemanlike, be of a trifling character, involving no material prejudice to individual rights, or offence against public morals or decorum, it will not in general properly be viewed as so affecting the reputation of the officer or the credit of the service as to be made the occasion of a prosecution under the Article.

---

[2] While the 2012 edition applies due to the date of the offenses, there are no changes in the current version.

> William Winthrop, *Military Law and Precedents* 711–12 (2d ed. 1920 Reprint) (footnotes omitted). Article 133 is not violated by conduct that falls short of the attributes of an "ideal officer and the perfect gentleman" or by "slight deviations constituting indecorum or breaches of etiquette," but by conduct that exceeds the "limit of tolerance" set "by the custom of the service to which the officer belongs."

*United States v. Brown*, 55 M.J. 375, 382 (C.A.A.F. 2001) (citations omitted).

The alluded-to custom of the service may derive from a prohibition already codified under military law. Article 133—in contrast to Article 134[3]—not only lacks a preemption clause but expressly "includes acts made punishable by any other article, provided these acts amount to conduct unbecoming an officer and a gentleman." MCM, Pt. IV, ¶ 59.c.(2). So one way the Government can prove an Article 133 violation is to prove that the accused committed some other offense under the UCMJ under circumstances that were dishonorable or disgraceful. There is, however, an important caveat:

> Whenever the offense charged is the same as a specific offense set forth in this Manual, the elements of proof are the same as those set forth in the paragraph which treats that specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and a gentleman.

MCM, Pt. IV, ¶ 59.c.(2). Courts thus view a specific offense incorporated within an Article 133 offense as a lesser-included offense of the latter. *United States v. Palagar*, 56 M.J. 294, 296 (C.A.A.F. 2002).

On the other hand, the underlying act or omission does not *have* to otherwise amount to an offense. Rather, "the appropriate standard for assessing criminality under Article 133 is whether the conduct or act charged is dishonorable and compromising . . . notwithstanding whether or not the act otherwise amounts to a crime." *Schweitzer*, 68 M.J. at 137. So another way for the Government to prove an Article 133 violation is to prove that the accused committed an act or omission that was, under the circumstances, unbecoming an officer and a gentleman independent of whether it otherwise constituted an offense. The Government would then be relieved of having to prove the elements of a specific offense, but to overcome constitutional vagueness and notice challenges, the record would need to demonstrate that the accused's

---

[3] *See* MCM, Pt. IV, ¶ 60.c.(5)(a).

conduct violated a reasonably-known service custom or standard of conduct. *United States v. Rogers*, 54 M.J. 244, 256 (C.A.A.F. 2000); *United States v. Johanns*, 20 M.J. 155, 158 (C.M.A. 1985); *see also Parker*, 417 U.S. at 747 ("'Notwithstanding the apparent indeterminateness of such a provision, it is not liable to abuse; for what those crimes are, and how they are to be punished, is well known by practical men in the navy and army, and by those who have studied the law of courts martial . . . .'") (quoting *Dynes v. Hoover*, 61 U.S. 65, 82 (1857)).

It is possible for one act to constitute both conduct unbecoming an officer and a specific offense without them necessarily being "the same" within the meaning of MCM, Pt. IV, ¶ 59.c.(2). *See generally United States v. Teters*, 37 M.J. 370, 373 (C.M.A. 1993). But, we hold, for a conviction under Article 133 to stand on its own apart from a specific offense, the Government must present a theory of liability at trial and prove how the conduct exceeded the "limit of tolerance based on customs of the service," MCM, Pt. IV, ¶ 59.c.(2), notwithstanding—that is, independent of—whether it constituted a specific offense.

*Procedural History of the Article 133 Specifications*

Appellant was charged with two specifications of conduct unbecoming an officer and a gentleman under Article 133, UCMJ, alleging he:

> (1) disgracefully and dishonorably communicate[d] to Cadet [A], a witness to [Appellant's] misconduct, messages of a harassing and intimidating nature, including electronic communications containing photos of then 4/c Cadet [A] with senior cadets and the words "looks like frat to me," or words or communications to that effect, and that, under the circumstances, his conduct was unbecoming an officer and a gentleman;

> and

> (2) disgracefully and dishonorably communicate[d] to Cadet [B], a witness to [Appellant's] misconduct, messages of a harassing and intimidating nature, including texts stating that if Cadet [B] made a report of sexual assault no one would believe her, the report would result in exposure of embarrassing details of her sex life and an investigation into and exposure of unrelated misconduct by Cadet [B], and further, that he would make a counter claim of sexual assault, and that, under the circumstances, his conduct was unbecoming an officer and a gentleman.

For the same acts, Appellant was also charged with two specifications of extortion under Article 127, UCMJ, alleging he:

(1) with intent to unlawfully obtain an immunity, to wit: prevent the initiation of an investigation of his assault on Cadet [A], an investigation that he believed could harm his future prospects of continued service in the U.S. Coast Guard, communicate[d] to Cadet [A] a threat to accuse Cadet [A] of fraternization;

and

(2) with intent to unlawfully obtain an immunity, to wit: prevent the initiation of an investigation of his assault on Cadet [B], an investigation that he believed could harm his future prospects of continued service in the U.S. Coast Guard, communicate[d] to Cadet [B] a threat to make a counter-claim of sexual assault against her.

The military judge provided standard elements and definitions of Article 133 and did not instruct that they incorporated extortion or any other specific offense as the underlying conduct. The Defense objected neither to the sufficiency of the specifications nor to the instructions.

The members acquitted Appellant of the first extortion specification but convicted him of the second as well as both conduct unbecoming specifications. On Defense motion, the military judge ruled that the convictions for extortion and conduct unbecoming for the same underlying act constituted an unreasonable multiplication of charges and conditionally dismissed the extortion specification.

*Analysis*

We conclude that Appellant's convictions under Article 133 either relied on the underlying conduct also constituting a specific offense—in which case the specifications were improperly charged and instructed on—or the evidence that Appellant's conduct was unbecoming independent of whether it amounted to a specific offense was legally insufficient. Looking at it either way, which we do below, the convictions cannot stand.

First, because the Article 133 offenses were not charged or instructed on as incorporating a specific offense, it would be error for the Government's theory of liability or proof to rely on

the underlying conduct also constituting a specific offense.  The Government could have pursued a theory of liability that Appellant's conduct amounted to a specific offense—here, most obviously extortion or obstruction of justice—and that it was, under the circumstances, unbecoming to extort others or to obstruct justice.  This, however, would require incorporating the specific offense along with its elements into the Article 133 offenses.  MCM, Pt. IV, ¶ 59.c.(2).  This, in turn, would make two errors plain or obvious despite Appellant's failure to object: (1) the Article 133 specifications were insufficient because they lacked notice that the underlying conduct constituted a specific offense;[4] and (2) the instructions were inadequate because they failed to alert the members that the elements of the Article 133 offenses included those of the specific offense.[5]

On the other hand, if the Government's theory of liability or proof did not rely on the underlying conduct also constituting a specific offense (as the Government urges on appeal), then the evidence must support that Appellant's conduct—standing alone and independent of whether it constituted a specific offense—was unbecoming.  We review legal sufficiency of the evidence *de novo*.  *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002).  Evidence is legally sufficient if, "considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day,* 66 M.J. 172, 173–74 (C.A.A.F. 2008) (citing *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987)).  In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution."  *United States v. Barner,* 56 M.J. 131, 134 (C.A.A.F.2001) (citations omitted).

Here, there must be legally sufficient evidence that: (1) Appellant did certain acts, that is, made the alleged communications to Cadets A and B; and (2) under the circumstances, these acts constituted conduct unbecoming an officer and a gentleman.  MCM, Pt. IV, ¶ 59.b.  Further, to

---

[4] *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011).  This is not to say that all *elements* of a specific offense undergirding an Article 133 offense must be alleged in an Article 133 specification—just that, at a minimum, the specification must provide notice of what the undergirding offense is.  *See, e.g., United States v. Norwood*, 71 M.J. 204, 206–07 (C.A.A.F. 2012).

[5] R.C.M. 920(e)(1); *United States v. Payne*, 73 M.J. 19, 24 (C.A.A.F. 2014) (holding that the military judge's failure to instruct on all elements constituted plain error).

pass constitutional muster, Appellant must have reasonably known, based on service customs or standards of conduct, that these acts were punishable. That custom or standard too must stand on its own without regard to whether the conduct also amounts to any specific offense.

Even viewed in a light most favorable to the prosecution, we conclude that the evidence fails to establish that Appellant's conduct was unbecoming independent of whether it amounted to extortion or obstruction of justice. It would not be hard to imagine how his conduct would have been unbecoming if Appellant sent the "harassing and intimidating" messages in order to influence them not to report the sexual assaults they were alleging he committed—in other words, if his conduct amounted to extortion or obstruction of justice. But if we remove consideration of whether Appellant's conduct amounted to one of those specific offenses, in our view, no readily identifiable service custom or standard of conduct remains to sustain the convictions. Certainly the Government, at trial, never clearly articulated an independent service custom or standard of conduct as its basis for finding Appellant's acts unbecoming.

Regarding Cadet B, who was Appellant's classmate and former intimate partner, the Government offered no cogent theory—neither at trial nor, frankly, on appeal—for how Appellant's conduct was unbecoming short of it amounting to extortion or obstruction of justice. Government counsel, in a largely *post hoc* rationalization, could only proffer that even if it did not rise to the level of a specific offense, it was still harassing, intimidating, or otherwise inappropriate under the circumstances. This is alarmingly vague: if Appellant's purpose in the communication was not to prevent Cadet B from reporting her allegation to law enforcement, then we find insufficient evidence that an independent, reasonably-known service custom or standard of conduct prohibited it. And even if there were such a custom or standard, the evidence establishes at best indecorum or a breach of etiquette rather than the type of dishonorable or disgraceful behavior seriously compromising one's standing as an officer that is punishable under Article 133.

With Cadet A, we do have the additional factor that she was, at the time, a fourth-class cadet while he was an upperclassman. The Government directs our attention to evidence that cadet regulations prohibited upperclassmen from fraternizing with fourth-class cadets and that

11

third-class cadets are viewed as "role models" to fourth-class cadets. (R. at 388.) While the Government is correct that this evidence tends to establish reasonably known standards for cadets (outside of the military criminal code), two problems remain.

First, this was not the theory of liability presented at trial. The Government presented evidence of cadet regulations as a predicate to explaining Cadet A's consensual sexual relationship with Appellant and her subsequent decision to break it off. It did not present a theory that the communication following the assault was unbecoming because it breached reasonably known cadet standards independent of specific offenses. Instead, the prosecution emphasized the "harassing and intimidating" nature of the communications to Cadet A, as well as public policy against suppressing reports of sexual assault. (R. at 1145, 1150.) The same concerns present with the communication to Cadet B are therefore present here. The public policy argument undercuts the Government's position on appeal by raising an interest typically vindicated by charging extortion or obstruction of justice.

Second, even were we to accept the Government's premise that sending the communication breached Appellant's role as a mentor even if it did not amount to extortion, the evidence fails to demonstrate that such a breach would be serious enough to constitute conduct unbecoming an officer and a gentleman. If Appellant sent the "looks like frat to me" communications not as a deliberate attempt to intimidate her into remaining mute with her sexual assault allegation but out of impetuous jealousy, this would be too minor a breach to constitute conduct unbecoming an officer and a gentleman.

In sum, we conclude that either Appellant's convictions under Article 133 impermissibly relied on the underlying conduct also constituting a specific offense without sufficient notice and proper instruction, or there is legally insufficient evidence that Appellant's conduct was unbecoming notwithstanding whether it amounted to a specific offense. We thus set aside the findings of guilty to both specifications under Article 133.

**Admissibility of Evidence Under Military Rule of Evidence 412**

We next consider Appellant's assertion that the military judge improperly excluded evidence pursuant to M.R.E. 412, which we review for an abuse of discretion. *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011).

M.R.E. 412 is a rule of exclusion. *United States v. Gaddis*, 70 M.J. 248, 251 (C.A.A.F. 2011). "Evidence offered to prove that any alleged victim engaged in other sexual behavior" or "to prove any alleged victim's sexual predisposition" is "not admissible in any proceeding involving an alleged sexual offense" unless it falls within limited exceptions subject to specified procedures. M.R.E. 412. Two of the rule's three exceptions are relevant here: (1) "evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent"; and (2) "evidence the exclusion of which would violate the constitutional rights of the accused." M.R.E. 412(b)(1)(B)–(C).

An accused seeking admission of evidence offered to prove other sexual behavior or sexual disposition of a victim has the burden of establishing he is entitled to one of M.R.E. 412's exceptions to its general prohibition of such evidence. *United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010). To determine if an exception claimed under M.R.E. 412 applies, the military judge must determine whether the offered evidence is "relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice." *United States v. Ellerbrock,* 70 M.J. 314, 318 (C.A.A.F. 2011). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." M.R.E. 401(a); *Ellerbrock,* 70 M.J. at 318. Evidence is material if "the fact is of consequence in determining" Appellant's guilt. M.R.E. 401(b); *United States v. Dorsey,* 16 M.J. 1, 6 (C.M.A.1983). Materiality is based on a "multi-factored" test: (1) the importance of the issue for which the evidence was offered in relation to the other issues in the case; (2) the extent to which this issue is in dispute; and (3) the nature of the other evidence in the case pertaining to the issue. *Ellerbrock*, 70 M.J. at 318.

To establish that the admission of evidence is constitutionally required, an accused must show that the evidence is "necessary" because it is relevant, material, and favorable to his defense. *Smith*, 68 M.J. at 448. In this context, "favorable" is synonymous with "vital." *Id.*

Even relevant and material evidence offered as an exception to M.R.E. 412 will be excluded unless an accused can demonstrate that its probative value outweighs the dangers of unfair prejudice. M.R.E. 412(c)(3); *Ellerbrock*, 70 M.J. at 319. "Those dangers include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Ellerbrock*, 70 M.J. at 319 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Here, Appellant sought admission of myriad evidence of other sexual behavior or sexual predisposition. The military judge denied all but a small portion. On appeal, Appellant focuses on the suppression of two matters: (1) evidence that Cadet A, after ending her relationship with Appellant and the alleged assault, engaged in an inappropriate relationship with a different upperclassman; and (2) numerous sexually explicit electronic communications between Appellant and Cadet B. We consider each in turn.

### *Evidence Pertaining to Cadet A*

Appellant asserts the military judge abused his discretion by denying his motion to admit evidence that following her break-up with Appellant, Cadet A engaged in a prohibited sexual relationship with an upperclassman while she remained a fourth-class cadet. We disagree.

First, we reject Appellant's assertion that M.R.E. 412 did not apply to this conduct. He argues that he was seeking not just evidence of a subsequent *sexual relationship*, but of subsequent *fraternization*, which he distinguishes because the latter does not have to include sexual conduct. The problem here, of course, is that the conduct he wished to inquire into *did* include sexual conduct. His trial motion, in fact, specified that he sought admission of evidence "about the circumstances surrounding [Cadet A's] previous sexual relationship" with the upperclassman and that their "inquiry will be focused on when the relationship commenced; where the individuals had consensual sex and the frequency of the sex and the fact that the relationship was prohibited by [Coast Guard Academy] rules." (Appellate Ex. 39 at 1.) Even if, as the Defense offered belatedly during argument on the motion, it could have framed its

questions in terms of fraternization while skirting the sexual component, the conduct itself was plainly "other sexual behavior" rendered generally inadmissible by M.R.E. 412(a)(1).

We also disagree that the military judge abused his discretion by ruling that Appellant failed to show the evidence was constitutionally required. Appellant urged at trial that the existence of a subsequent prohibited relationship made it more probable that Cadet A lied about her reasons for breaking up with him, which is an attack on her credibility. This by itself is a questionable premise, but even if we assume relevance, he fails to show materiality—that is, that the validity of her stated reasons for suspending the relationship was a matter of consequence in determining Appellant's guilt.

This is so even though Cadet A did not dispute the subsequent inappropriate relationship in a pretrial motions session. The relevant issue was not whether Cadet A had a relationship with another upperclassman; it was whether she was untruthful when she indicated that she ended her relationship with Appellant for fear of being caught fraternizing and this was in dispute. In fact, she indicated that she terminated the second relationship for the same reason: out of fear of getting caught and punished. While Cadet A's credibility was, of course, an issue, whether she was truthful on this point was of no consequence in itself. And the extent to which the issue is in dispute is but one factor in our analysis. Far outweighing that is the first factor: importance of the issue. What truly was in Cadet A's heart when she broke up with Appellant was unimportant and immaterial to the question of Appellant's guilt.

In his reply brief, Appellant urges a second theory for why the evidence was material: that it tended to demonstrate that Cadet A had a motive to fabricate the allegation against him because Appellant was the only one who knew about the relationship and could report her. This theory, however, was not presented below and we will not fault the military judge for failing to grant relief on a theory not presented to him. *United States v. Carpenter*, 77 M.J. 285, 289 (C.A.A.F. 2018) ("[O]ur review for error is properly based on a military judge's disposition of the motion submitted to him or her—not on the motion that *appellate* defense counsel now wishes *trial* defense counsel had submitted.").

Finally, Appellant failed to show that whatever limited probative value the evidence may have had outweighed the dangers of unfair prejudice. As discussed, Cadet A's reasons for breaking up with Appellant were at best marginally relevant. Grilling her with questions about an allegedly inappropriate relationship that came after her relationship with Appellant and was unrelated to it would have tended to harass, degrade, or humiliate her and would have confused the issues.

*Evidence Pertaining to Cadet B*

Appellant sought to introduce a volume of sexually explicit electronic messages between him and Cadet B. At issue here are not the messages immediately preceding the alleged assault, including Appellant's invitation to "cuddle"—the Government sponsored those into evidence. At issue instead is a thread containing "various text messages describing different sex acts they perform on one another, the initiation of sexual activity with one another, where they engaged in sexual acts, and sexual thoughts and emotions they conveyed to each other." (Appellate Ex. IX at 1–2.) Appellant asserts these messages met both the consent and constitutionally-required exceptions of M.R.E. 412 and thus the military judge abused his discretion by excluding them. We disagree.

The messages tend to show that Cadet B and Appellant enjoyed having sex with one another and talking about it. The members, however, were well aware that the two had been in a long-standing relationship that included sexual intimacy. The details of that intimacy and their attitudes towards sex were not of consequence in determining Appellant's guilt. Further, admission of the evidence would have tended to harass and humiliate Cadet B and to confuse the issues. The military judge did not abuse his discretion in denying Appellant's motion to admit it.

**Sentence Reassessment**

Because we set aside the Article 133 convictions, we must determine whether we are able to reassess the sentence. We conclude we can.

Courts of Criminal Appeal have broad discretion to reassess sentences. *United States v. Winckelmann,* 73 M.J. 11, 15 (C.A.A.F. 2013). But we may only do so if we can reliably and

confidently determine that, absent the error, the sentence would have been at least of a certain magnitude. *United States v. Buber,* 62 M.J. 476, 479 (C.A.A.F. 2006); *United States v. Harris,* 53 M.J. 86, 88 (C.A.A.F. 2000). If we cannot do this, we must order a rehearing. *Harris,* 53 M.J. at 88. A reassessed sentence must not only "be purged of prejudicial error[,]" but "also must be 'appropriate' for the offense involved." *United States v. Sales,* 22 M.J. 305, 308 (C.M.A. 1986).

We apply the totality of the circumstances of each case to make sentence reassessment determinations, guided by the following "illustrative, but not dispositive, points of analysis":

(1) Whether there has been a dramatic change in the penalty landscape or exposure.

(2) Whether sentencing was by members or a military judge alone. We are more likely to be certain of what sentence a military judge would have imposed as opposed to members.

(3) Whether the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, similarly, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.

*Winckelmann,* 73 M.J. at 15–16.

Weighing the totality of the circumstances, we conclude that we can reliably and confidently determine that the sentence, purged of error, would have included at least dismissal and confinement for ninety-three months. First, while we set aside the Article 133 conviction pertaining to Appellant's communication to Cadet B, in our decretal paragraph we reinstate the conditionally-dismissed extortion specification based on the same communication. The members thus still would have been entitled to consider the same evidence of this communication and the maximum punishment under Article 127 actually would have been greater: three years' confinement versus one. Thus, ironically, had it not been for the Article 133 convictions, Appellant's maximum confinement at trial would have been sixty-three years vice

sixty-two. At any rate, our action changes the penalty landscape little, if at all, and we can be confident that setting aside the Cadet B Article 133 specification had no impact on the sentence.

Second, we are confident that the remaining offenses capture the gravamen of Appellant's criminal conduct. We leave intact Appellant's convictions for sexual assault of two fellow cadets and extortion of one. Appellant's communications to Cadet A, which the members found did not rise to anything more than a purely military offense, pales in comparison. Finally, even without the conviction, evidence of Appellant's post-assault "looks like frat to me" communications likely would have been admissible as aggravation in sentencing.

On the whole, acknowledging sentencing was by members, we doubt that the erroneous Article 133 convictions had any impact on the sentence. But out of lenity and to further enhance our confidence in the minimum sentence the members would have adjudged, we reduce Appellant's confinement by three months.

### Decision

The findings of guilty to Charge III and its two specifications are set aside. The finding of guilty to Specification 2 of Charge II is reinstated. Only so much of the sentence as includes dismissal and confinement for ninety-three months is affirmed. The remaining findings and sentence, as modified, are correct in law and fact and are affirmed.[6]

Chief Judge McCLELLAND concurs.

BRUCE, Judge (concurring in part and dissenting in part):

I agree with the majority's resolution of the issues in this case, except for the sentence relief granted. In this case, sentencing was by members. In my experience, member sentencing

---

[6] Although not raised by the parties, we note that our decision exceeds by roughly a month the eighteen-month timeline established by *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). While this is presumptively unreasonable, *id.*, this was a lengthy record requiring counsel and the Court to grapple with novel, difficult issues. Appellant has not raised the issue or alleged any prejudice, and we perceive none. We find no due process violation; no relief is warranted. *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006); *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002).

is less predictable than sentencing by a military judge.  I agree that in this case, the Court can reassess the sentence.  Under the circumstances, in order to reliably and confidently determine a sentence that is no greater than what the members would have awarded, absent the error, I would only approve confinement for ninety months.

The majority may be correct in their reassessment of the sentence.  But in a case like this, I don't see a compelling need to make too fine a correction.  My preference is to err on the side of leniency.



For the Court,

Sarah P. Valdes
Clerk of the Court

19