# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant KE'AIRA S. CONLEY**
**United States Army, Appellant**

ARMY 20170560

Headquarters, I Corps
Sean Mangan and Lanny J. Acosta, Jr., Military Judges
Colonel Steven C. Henricks, Staff Judge Advocate

For Appellant: Colonel Elizabeth G. Marotta, JA; Major Julie L. Borchers, JA; Captain Steven J. Dray, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Catharine M. Parnell, JA (on brief).

28 February 2019

---------------------------------
OPINION OF THE COURT
---------------------------------

WOLFE, Senior Judge:

Staff Sergeant (SSG) Ke'aira S. Conley had sex multiple times with a military prisoner while she was assigned as staff to the Northwest Joint Regional Correctional Facility. This and other conduct resulted in several charges. For the first time, on appeal, SSG Conley complains that those charges were unreasonably multiplied.[1]

---

[1] A military judge sitting as a general court-martial convicted appellant, pursuant to her pleas, of two specifications of failing to obey a lawful order and one specification of adultery in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (UCMJ). The military judge sentenced appellant to be discharged from the service with a bad-conduct discharge, to be confined for four months, and to be reduced to the grade of E-1. The convening authority approved the sentence as adjudged.

Appellant acknowledges that her guilty plea waived a claim that the charges were unreasonably multiplied. Accordingly, appellant asks that we exercise our unique authority under Article 66, UCMJ, to notice forfeited and waived claims of error.

We first consider whether an appellant is permitted to ask this court to grant relief for a waived issue given our superior court's decision in *United States v. Chin*.[2] We conclude that this case is distinguishable from *Chin*. Second, we consider the framework for evaluating whether we should notice a claim of waived error. We identify some of the circumstances that would weigh in favor of providing relief for a waived claim of error. After identifying the framework with which to consider the problem, we decide to leave appellant's waiver intact.

## BACKGROUND

The central facts of the case were agreed to by the parties as part of appellant's guilty plea. Staff Sergeant Conley was a culinary supervisor in the confinement facility's mess. Her responsibilities included ensuring good order and discipline of both the soldiers and prisoners whom she supervised. Beginning in April of 2016, appellant began having an overly-familiar relationship with Prisoner AS. They first spent an inordinate amount of time together in the kitchen, then began having sexual conversations, and then, by May of 2016, they made multiple regular trips to a nearby bathroom to have sex. Staff Sergeant Conley and Prisoner AS would also text each other using a cell phone that had been illegally brought into the confinement facility.

For these acts, SSG Conley was separately charged and pleaded guilty to: (1) violating orders by fraternizing with Prisoner AS; (2) violating orders by wrongfully corresponding with Prisoner AS; and (3) for having an adulterous sexual relationship with Prisoner AS while she was married to another person.

## LAW AND DISCUSSION

On appeal, SSG Conley complains that the specifications of violating orders by fraternizing and corresponding with Prisoner AS are unreasonably multiplied. The two specifications violated different paragraphs of the same order. Painting with a broad brush, we agree with appellant that wrongfully corresponding with a prisoner is a type of fraternization.

In *United States v. Quiroz,* our superior court (CAAF) outlined the test for determining when one specification is unreasonably multiplied with another

---

[2] 75 M.J. 220 (C.A.A.F. 2016).

2

specification. 55 M.J. 334 (C.A.A.F. 2001). However, as appellant admits, any claim that the charges were unreasonably multiplied was waived when appellant entered an unconditional guilty plea to both offenses. *See United States v. Hardy*, 77 M.J. 438, 440-42 (C.A.A.F. 2018).

A valid waiver extinguishes the claim of legal error. *United States v. Ahern*, 76 M.J. 194, 197-98 (C.A.A.F. 2017). As such, a case becomes "correct in law" for purposes of our Article 66 review when a valid waiver applies to what would otherwise be prejudicial error.[3]

*Is appellant permitted to raise a waived claim of UMC to this court?*

In her brief, appellant specifically asks this court to use our authority under Article 66 to notice appellant's waiver and answer the question of whether the charges are unreasonably multiplied. Indeed, we have specifically stated that we would find such arguments helpful when conducting our Article 66 review. *United States v. Clark*, ARMY 20160121, 2017 CCA LEXIS 275, at *3 n.2 (Army Ct. Crim. App. 25 Apr. 2017) (mem. op.). However, our guidance may be in conflict with our superior court's decision in *Chin*. Therefore, the first question we must address is whether *Chin* specifically bars appellant from asking for such relief.

In *Chin*, our superior court addressed whether a Court of Criminal Appeals (CCA) had the authority to grant relief for UMC when an appellant pleaded guilty and specifically agreed to "waive all waivable motions." 75 M.J. at 221. The court held "the CCA's action [granting relief] was well within the limitations of its [review]." *Id.* at 224. In explaining the reach of waiver in an accused's guilty plea, however, the court said:

> Contrary to the Government's claims of Armageddon, there is nothing new about today's decision, and it does not mean that a "waive all waivable motions" provision or unconditional guilty plea is without meaning or effect. Waiver at the trial level continues to preclude *an appellant* from raising the issue before either the CCA or this Court.

---

[3] The same reasoning applies to forfeited error where an appellant has not met his burden of establishing the error was clear and obvious and materially prejudices his substantial rights (i.e., plain error). *See United States v. Keller*, ARMY 20150619, 2018 CCA LEXIS 463, at *7 n.3 (Army Ct. Crim. App. 26 Sep. 2018) (mem. op.), *pet. denied* _M.J._ (C.A.A.F. 26 Feb. 2019).

*Id*. at 223 (emphasis in original).

The last sentence quoted above, especially when read alone, would appear to prohibit exactly what appellant has done here: requesting relief for an issue waived at a guilty plea.[4]  Indeed, both cases involve the same issue of UMC.

We see *Chin* as distinguishable, however, as the accused in *Chin* had doubly waived relief for UMC.  First, in *Chin*, the accused pleaded guilty which, standing alone, waived any claim of UMC.  *See Hardy*, 77 M.J. at 440-42.  Second, and more important to the CAAF's analysis, the accused in *Chin* specifically agreed to "waive all waivable motions."  75 M.J. at 221.  The CAAF's decision in *Chin* focused almost entirely on the effect of this pretrial agreement term.  *Id*. at 222-24.  We understand the CAAF's holding in the case to be that a pretrial agreement term can bind the parties, but the parties' agreement cannot bind the scope of the CCA

---

[4] Although we read *Chin* narrowly, we would suggest to our superior court that even this narrow interpretation be reconsidered for several reasons.  First, an appellant's perspective on how this court should exercise our Article 66 authority in resolving waived issues helps us identify a problem that we might otherwise miss.  As our superior court has stated, "even the most conscientious counsel and judges will occasionally overlook an error . . . for that reason, any assistance in the identification of issues can further the proper administration of military justice." *United States v. Grostefon*, 12 M.J. 431, 436 (C.M.A. 1982).  Second, we benefit from the parties' adversarial testing of the record to aid us seeing things in different lights.  Third, the bar is one-sided, as the government is not prohibited from arguing that the findings "should be approved."  Fourth, when we sua sponte grant an appellant relief, (as *Chin* envisions), we risk – especially if a rehearing is involved – giving an appellant relief he does not want.  In at least one instance, an accused has requested additional relief after we authorized an unwanted rehearing that caused him to be returned to full duty status and lose his civilian employment.  Additionally, we respectfully see Congress as having delegated rule-making authority for the CCAs to The Judge Advocates General.  UCMJ, art. 66.

But mostly, we would suggest revisiting *Chin*, or at least correcting our understanding of *Chin*, in light of the CAAF's interpretation of this court's authority in *United States v. Nerad*, 69 M.J. 138 (C.A.A.F. 2010).  Under *Nerad*, we may not exercise our "should be approved" authority as an act of clemency.  69 M.J. at 145-47.  As *Nerad* makes clear, we are a court of law (not equity) and our power is limited to exercising legal standards.  *Id*.  If the central holdings of *Chin* and *Nerad* are correct, and we must consider whether findings that are correct in law should nonetheless be set aside based on legal standards, we would benefit from the parties' briefs on the issue.

review. An accused who agrees to waive UMC as part of a pretrial agreement may remain bound by the agreement, but the CCA must continue to fulfill its statutory duty to approve only those findings that "should be approved."

In this case, appellant did plead guilty. And the guilty plea did constitute waiver of the UMC claim. But, in contrast to *Chin*, appellant did not agree to waive a claim of UMC or agree to waive all waivable motions. Thus, while appellant is bound by the pretrial agreement, we do not see *this* agreement as preventing appellant from advocating that we set aside appellant's waiver.

Put differently, appellant's guilty plea constituted waiver and therefore extinguished as a matter of law any claim that her charges are unreasonably multiplied. However, notwithstanding the lack of legal error, it remains for this court to determine whether the findings "should be approved" under Article 66. Unlike in *Chin,* nothing in the plea agreement prohibits appellant from providing this court with appellant's view on whether we should approve the findings of guilty.

As we find appellant was not prohibited from asking us to notice the waived error, we turn to whether noticing the error is appropriate. When determining whether to notice error, we must first review the entire record. *United States v. Schweitzer*, 68 M.J. 133, 139 (C.A.A.F. 2009) ("the court below was required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record") (citing *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002)) (quoting *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000)). This statutory requirement allows us to, in our discretion, treat a waived or forfeited claim as if it had been preserved at trial. *See United States v. Britton*, 26 M.J. 24, 27 (C.M.A. 1988) ("while it is the general rule that failure to make a timely motion at trial *may* estop one from raising the issue on appeal, failure to raise the issue does not preclude the Court of Military Review in the exercise of its powers from granting relief") (emphasis in original).

This case presents as good an opportunity as any to explain the framework for how we approach and analyze whether to exercise our broad authority under Article 66, UCMJ.

*The third of three tests*

Under Article 66, UCMJ, this court must determine whether the findings and sentence of a case are: (1) correct in law; (2) correct in fact; and (3) should be approved. As a general practice, we reach the issue of whether the findings and sentence "should be approved" only after we first determine that the findings and sentence are correct in law and fact. UCMJ, art. 66. There are a few reasons to take this approach.

First, anytime this court sets aside the findings or sentence, we then have to determine whether we will return the case to a convening authority for a rehearing. When a specification is legally or factually insufficient, however, a rehearing is barred.[5] If we got the order wrong, (and first determined whether a finding should be approved before addressing whether the finding is legally and factually sufficient), we may erroneously order a rehearing in a circumstance where a rehearing should have been barred.

Second, by addressing errors of law first, we ensure that our reasoning is transparent and subject to appropriate scrutiny. Our superior court is a court of law. *See* UCMJ, art. 67(c). We muddy the scrutiny of our reasoning when we decide a case based on our unique Article 66 authority under circumstances where we would have reached the same result as a matter of law.

Third, by parsing our duties under Article 66, and specifically stating which authority is leading us to a particular holding, we provide more stable case law on which future litigants can rely.

---

[5] *See* U.S. Const. amend. V, cl. 2 ("[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."); UCMJ, art. 66 ("If the Court of Criminal Appeals sets aside the findings and sentence, it may, except where the setting aside is based on lack of sufficient evidence in the record to support the findings, order a rehearing."); *see also United States v. Scott*, 437 U.S. 82, 90-91 (1978) ("The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict [...] poses no bar to further prosecution on the same charge.") (internal citation omitted).

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether "after weighing the evidence in the record of trial and making allowances for not having personally observed the witness, the [court of appeals is itself] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; UCMJ, art. 66.

*A unique military authority*

While this court's exercise of our Article 66 "should be approved" authority is *not* limited to a certain class of cases, there are types of issues that are more likely to call out for the exercise of this unique authority than others.

Since the establishment of the UCMJ, the evolution of military justice has often seen the adaptation of civilian practices when not inconsistent with the purpose of military justice. But, while courts-martial have - more and more - come to resemble their civilian counterparts, there remain many significant differences. Panel member selection and voting remains substantially different than civilian juries. *See* UCMJ, art. 25 (who may serve on courts-martial); UCMJ, art. 51 (voting and rulings). Courts-martial are often conducted in remote locations[6] and the accused may not have the same access to familial support that he would have had in his home town. Military superiors have broad authority over persons subject to their orders and there is the persistent danger that this authority may be misused in a manner that undermines a fair process. The President has specifically exempted certain Federal Rules of Evidence from applying to courts-martial.[7] And finally, military members are subject to a range of criminal sanctions for which there is no civilian counterpart.[8]

In short, while there are both structural and procedural safeguards that are designed to ensure that the court-martial is a fair and just proceeding at the trial level, the broad authority given to a CCA under Article 66 sits as a safety valve of last resort. That is why our superior court has described our authority as "something like the proverbial 800-pound gorilla when it comes to their ability to protect an accused." *United States v. Parker*, 36 M.J. 269, 271 (C.M.A. 1993). Indeed, a "clearer *carte blanche* to do justice would be difficult to express." *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991) (italics in original).

---

[6] Unlike federal civilian criminal proceedings, courts-martial must provide expeditious process for expeditionary units. The military justice system ensures good order and discipline worldwide. As Article 5, UCMJ states, in its entirety, "This chapter applies in all places." To this extent, military judges move from installation to installation to try cases before panel members who come and go, as do most, if not all, military trial participants.

[7] *Compare* Military Rule of Evidence 704 with Federal Rule of Evidence 704(b).

[8] *See, e.g.*, Articles 86 and 87, UCMJ.

So while our authority under Article 66 is in <u>no way</u> limited to certain issues, on a practical level the exercise of this unique power is more likely to be found in certain military circumstances which – while not technically amounting to legal error – have disadvantaged the accused in a manner that the CCA determines needs correction or has resulted in a court-martial where the perception of unfairness in the trial may have the actual effect of *undermining* good order and discipline. If on a practical level we are more likely to exercise our "should be approved" power in circumstances that are, at the source, born from uniquely military origins, we would benefit from the parties briefing the issue with this in mind.

*Noticing waived issues in this guilty plea*

With due consideration of the framework complete, we now turn to whether we should use our authority under Article 66 to notice the waived issue of unreasonable multiplication of charges in this case. For the reasons outlined below, we should not.

Nearly all pretrial agreements involve compromise by both the accused and the government. *See generally* Rule for Courts-Martial (R.C.M.) 705. The government usually agrees to reduce the sentence exposure of the accused and often agrees to dismiss some of the charges that the accused is facing. The accused gives up, most importantly, the obligation for the government to prove guilt.

In this case, SSG Conley agreed to plead guilty to three violations of the UCMJ. In exchange for this concession, the government agreed to dismiss two specifications that alleged SSG Conley had violated an order by providing Prisoner AS a cell phone and then lying about it to investigators. Had they been proven, the dismissed specifications would have increased the maximum confinement faced by appellant by an additional seven years. Additionally, for appellant's substantial and serious misconduct, the government agreed to significantly reduce the maximum possible sentence to only one year of confinement.

If we were to disrupt the balance struck by the parties in this case, there is some risk we would undermine confidence that in future pretrial agreements the terms will be viewed as binding. While the risk may be small, in the future the government may not so willingly enter into pretrial agreements – or may seek the extraction of greater concessions. To set aside a finding that is correct in law, and which appellant specifically agreed to plead guilty to, may be seen as this court effectively disrupting the balance struck by the parties before trial.

On the other hand, the pretrial agreement in this case specifically did not include an agreement to waive UMC or require appellant to waive all waivable motions. The CAAF in *Chin* specifically stated a CCA could give weight to an accused's decision to waive all motions when determining whether to notice the

waiver. 75 M.J. at 223. Given the *absence* of a specific waiver provision here, and given that the term is common in pretrial agreements, one could infer an intent by the parties to let this court resolve the issue on appeal unencumbered by the pretrial agreement. Here, appellant and the government specifically negotiated that appellant would waive a suppression motion but left the agreement silent as to what other issues were waived by appellant's plea.

But, in the end, after reviewing the entire record, we conclude that this case does not call out for relief. We find, for example, no evidence of impropriety, government overreach or excess, or other matter that might weigh in favor of noticing a waived issue. In light of appellant's serious crimes, we view the terms of the agreement to be generous rather than onerous.

Certainly, there are instances where disrupting a negotiated plea is warranted and where noticing a waived issue is an appropriate remedy. There will be cases where individual judges may determine that noticing waived error is necessary,[9] but this is not such a case.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge SALUSSOLIA and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[9] *See, e.g.*, *United States v. Clark*, ARMY 20140252, 2016 CCA LEXIS 363, *13 (Army Ct. Crim. App. 31 May 2016) (mem. op.) (Haight, S.J., dissenting) ("I find it difficult to see how this court can say that under the circumstances found in this case that multiple convictions 'should be approved' when binding precedent unequivocally informs us that separate findings of guilty 'should not be' approved.") (quoting UCMJ, art. 66) (citing *United States v. Flynn*, 28 M.J. 218 (C.M.A. 1989); *United States v. Clarke*, 74 M.J. 627 (Army Ct. Crim. App. 2015)).