UNITED STATES

v.

Sergeant Aaron M. LITTLEJOHN, Jr., FR 038–24–8100, United States Air Force.

ACM 22264.

U. S. Air Force Court of Military Review.

12 May 1978.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Major Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before EARLY, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a general court-martial, with members, the accused was convicted of making a fraudulent claim against the United States in the amount of $693.03, failing to obey a lawful order, and willfully disobeying the order of his superior commissioned officer, in violation of Articles 132, 92 and 90, respectively, of the Uniform Code of Military Justice, 10 U.S.C. §§ 932, 892 and 890. The approved sentence provides for a bad conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for twelve months and reduction to airman basic.[1]

In the initial claim of error we address, appellate defense counsel contend:

THE APPELLANT WAS PREJUDICIALLY DENIED THE ASSISTANCE OF INDIVIDUALLY SELECTED DEFENSE COUNSEL, VIZ., CAPTAIN ALAN J. PARRY, THE DEFENSE COUNSEL WHO REPRESENTED THE APPELLANT THROUGHOUT THE ARTICLE 32 INVESTIGATION. FURTHER, THE MILITARY JUDGE ERRED IN NOT GRANTING A CONTINUANCE UNTIL CAPTAIN PARRY WOULD BE REASONABLY AVAILABLE.

We disagree.

The accused was tried at Incirlik Common Defense Installation, Turkey, on 14, 15 and 16 April 1977. During the Article 32 investigation of the charges, which began on 9 December 1976 and was completed on 4 February 1977, the accused was represented by requested military counsel, Captain Alan J. Parry. Captain Parry was the Area Defense Counsel assigned to the Karamursel Common Defense Installation, Turkey. Following the Article 32 investigation, Captain Parry maintained telephonic contact with the accused until he departed from Turkey on 17 March 1977 for the purpose of attending the Air Force's Squadron Officers School (SOS) at Maxwell Air Force Base, Alabama, enroute to his new duty assignment at Williams Air Force Base, Arizona. The school was scheduled to begin on 29 March 1977 and end on 10 June 1977.

The charges against the accused were referred to trial on 15 March 1977. At that time the convening authority appointed Captain Robert P. Hailey as the accused's defense counsel and Captain James P. Mimikos as the assistant defense counsel. Captain Parry was not appointed to represent the accused.

On 24 March 1977, the accused submitted a letter requesting that Captain Parry be assigned to represent him at trial as his individual military counsel. The accused's request was referred to Parry's ultimate superior, the Judge Advocate General of the Air Force, who, by message dated 31 March 1977, notified the accused that, on the basis of his assignment to the Squadron Officers School, Captain Parry was not reasonably available to represent him. The message indicated that if Captain Parry served as the accused's counsel he probably could not successfully complete the schooling. It further referenced a 21-day lead time requirement to obtain authorization for military personnel to enter Turkey, in consequence of which there was insufficient time for Captain Parry to proceed to Turkey to participate in the trial then scheduled for 12 April 1977.

1. By General Court-Martial Order No. 23, 9 March 1978, the Commander, Headquarters, Lowry Technical Training Center (ATC), Lowry Air Force Base, Colorado, suspended the bad conduct discharge and the remaining confinement and forfeitures until 1 July 1978, with provision for automatic remission.

On 8 April 1977, the military judge convened a 39(a) session[2] for the purpose of considering a renewed request by the accused that Captain Parry be assigned as his individual military counsel. At the conclusion of the hearing, the military judge denied the request, ruling that Captain Parry was not reasonably available. As the Headquarters Air Force authority before him had done, the military judge treated the accused's request for Captain Parry as a standard application for individual counsel submitted pursuant to paragraph 48*b* of the Manual for Court-Martial, United States 1969 (Rev.). The military judge also denied an alternative defense request for a continuance of sufficient duration to permit Captain Parry to represent the accused after completion of his schooling.

■ Upon initial consideration of the record, it appeared to us that both the military judge and the pretrial authority erred in treating the accused's request for Captain Parry as a normal application for individual military counsel to be determined on the basis of whether he was reasonably available. See Manual for Courts-Martial, supra, para. 48. The record indicated there was a bona fide and active attorney-client relationship between Captain Parry and the accused which retained its full vitality when the accused formally requested that Parry be assigned to represent him at trial.

For that reason, we believed the true issue in the case was not the availability of requested counsel, but the severance by the government of an existing attorney-client relationship, or frustration of the continuation of that relationship, by reassignment of the attorney away from the trial situs prior to trial. *United States v. Owensby*, 46 C.M.R. 523 (N.C.M.R.1972); see *United States v. Catt*, 1 M.J. 41 (C.M.A.1975); *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972); *United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970). If that were in fact the case, the government was required to satisfy the heavy due process burden of showing *good cause* for the severance of the relationship, rather

than the much less severe standard of *reasonable nonavailability* involved in a request for individual military defense counsel. *United States v. Owensby* and *United States v. Eason*, both supra.

■ An indication in the record that Captain Parry volunteered for the session of the Squadron Officers School he attended, the inclusive dates of which potentially conflicted with the trial, caused us to delay our decision on the issue and ultimate disposition of the case. That circumstance, which was mentioned in passing but not explored at trial, suggested that Captain Parry was aware, perhaps early in his association with the accused, that their relationship would be limited to pretrial activities. If that were indeed the case, it seemed likely that Captain Parry would have communicated the limited scope of his participation to the accused.

By order dated 5 December 1977, we ordered a limited evidentiary hearing for the purpose of fully developing that aspect of the relationship between Parry and the accused. *United States v. Littlejohn*, 4 M.J. 651 (A.F.C.M.R.1977). Such proceeding was duly held on 24 January 1978. A military judge presided over the hearing which was attended by the accused, his appointed counsel and government counsel. During the proceeding, Captain Parry and the accused testified under oath. In addition, the stipulated testimony of Captain Mimikos and Lieutenant Colonel Thomas N. Williams, Chief Circuit Defense Counsel, USAF Trial Judiciary, Sixth Circuit, Captain Parry's immediate superior while in Turkey, was presented. At the conclusion of the hearing, the military judge made appropriate findings of fact and a verbatim, authenticated transcript of the proceeding was prepared and promptly forwarded for inclusion with the record of trial.

The limited hearing confirmed the fact that Captain Parry volunteered to attend SOS. He formally applied to attend the school on 7 December 1976; that was after he had agreed to represent the accused dur-

---

**2.** Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839.

ing the Article 32 investigation and discussed the case with him by telephone, but before their initial face-to-face meeting. Although during his early discussions with the accused Captain Parry did not mention having volunteered for SOS, he did inform him that his tour of duty in Turkey was destined to end in April and that if the trial were held thereafter he would not be available to represent him. Even though he thought the trial would be held early enough for him to participate Captain Parry did advise the accused of his options if his rotation date to America preceded the trial. He told the accused that in that event he could request representation by circuit and area defense counsel. In his testimony at the limited hearing, Captain Parry further recollected having informed the accused that if the trial were held after his departure, he had a right to request his services as individual military defense counsel, and that such a request would be determined on the basis of whether he was reasonably available.

During the first week of January 1977, Captain Parry received notification that he had been selected to attend the SOS class that was to begin on 29 March 1977. That circumstance caused Captain Parry to leave Turkey about a month earlier than his scheduled departure date. His normal rotation date was 22 April but in order to attend the school he was required to leave Turkey on 17 March. In the light of hindsight, it is evident that but for the curtailment of his tour in consequence of his having volunteered for SOS, Captain Parry would have remained in Turkey a sufficient period of time to represent the accused at trial.

When in early March, Captain Parry realized he would be leaving Turkey before the accused's expected trial, he discussed the situation with his supervisor, Lieutenant Colonel Williams, the Chief Circuit Defense Counsel for the Sixth Circuit. Colonel Williams advised Parry to continue representing the accused until he left Turkey at which time he was to send the case file to the defense office at Incirlik. On the basis of his discussion with Lieutenant Colonel Williams, Captain Parry understood that he was to be released from the case when he rotated from Turkey. Neither at that time, nor at any time thereafter, did Captain Parry indicate to Lieutenant Colonel Williams, or anyone else, that he desired to delay his departure from Turkey in order to represent the accused.

About a week before he left Turkey, Captain Parry contacted the accused by telephone to inform him he would not be able to represent him. Captain Parry indicated at the limited hearing that his discussion with the accused did not involve any specific agreement by the accused to release him. The attorney recalled that, in reaction to his message, the accused conveyed an impression of resigned acquiescence; in Parry's words, something to the effect, "If that's the way it is, I guess that's the way it is." The accused did not indicate at that time that he wanted Captain Parry to represent him at his anticipated trial.

■ Although a convening authority cannot, without good cause, authorize a defense counsel to represent an accused only to a specified point terminating short of the most crucial element of such representation—the trial itself, *United States v. Tavolilla*, 17 U.S.C.M.A. 395, 38 C.M.R. 193 (1968), it is an entirely different matter when the convening authority is not responsible for such limited representation. Here, although undeniably Captain Parry and the accused entered into an attorney-client relationship, it is clear that during its genesis the attorney communicated to the accused the distinct possibility that their association was destined to terminate short of trial. At the time, of course, the potential limitation verbalized by Captain Parry related to his scheduled April reassignment to the United States. However, as seen, that contingency was soon overtaken by intervening factors, Parry's selection for SOS and his earlier than scheduled departure from Turkey to attend the school. The record persuades us that the accused was aware, early on, that Parry's continued representation after the Article 32 investigation was contingent upon his availability.

The foregoing evidence demonstrates that the actual cause of the termination of the attorney-client relationship prior to trial was not unilateral government action, but the approval of Captain Parry's personal request to attend SOS and the corporate defense action to assure that he could attend the session of the school that began in March. We accordingly conclude that the matter of Captain Parry's availability at the time of the formal requests for his services involved a question of whether the attorney was reasonably available to represent the accused. The true nature of the issue before us, then, is not whether the government demonstrated good cause for the severance of an attorney-client relationship, but whether the determination that Parry was not reasonably available to represent the accused at trial constituted an abuse of discretion. *United States v. Gatewood*, 15 U.S.C.M.A. 433, 35 C.M.R. 405 (1965); *United States v. Paul*, supra; Cf. *Stanten v. United States*, 21 U.S.C.M.A. 431, 45 C.M.R. 205 (1972).

We find no abuse of discretion. The record shows that at the time the authority at Air Force Headquarters responded to the accused's pretrial request for Captain Parry, the attorney was enrolled in SOS. Parry's attendance at SOS involved more than a routine change of assignment. See *United States v. Murray*, supra. Squadron Officers School is an integral part of the Air Force's total program of professional military education. As the trial counsel argued at trial, the service school promotes the efficiency of the Air Force by imparting knowledge and ability to junior officers. It is also an important plateau in the career progression aspirations of those selected to attend. Selection to participate in the in-residence program at Maxwell Air Force Base is based on a limited, competitive quota system. Air Force Manual 50–5, Volume II, 1 September 1976.

The record further indicates that had Captain Parry been declared available to represent the accused, his absence from SOS would likely have prevented him from successfully completing the training, at least on a resident basis. It is clear that in

making their decisions, the authority who considered the accused's pretrial request for Captain Parry, as well as the military judge, properly weighed the "exigencies and practicalities" of the situation, including the nature of Parry's assigned duties, the time required to represent the accused and the consequences of such representation. *United States v. Vanderpool*, 4 U.S.C.M.A. 561, 16 C.M.R. 135 (1954); *United States v. Cutting*, 14 U.S.C.M.A. 347, 34 C.M.R. 127 (1964); *United States v. Gatewood*, supra; *United States v. Barton*, 48 C.M.R. 358 (N.C.M.R.1973), *pet. denied*, 22 U.S.C.M.A. 648 (1973). Under the circumstances, we are satisfied that the denial of the request was based on more substantial considerations than the mere financial, logistical and administrative burden on the government potentially entailed. See *United States v. Eason*, supra. In short, the record demonstrates that the denial was based upon reasonable considerations and was, thus, not an abuse of discretion.

We are further of the opinion that the military judge did not abuse his discretion in denying the accused's alternative motion for a continuance until Captain Parry was available to represent him following his June graduation from SOS, some two months hence. See *United States v. Massey*, 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964). At the time of the motion, the trial was scheduled for 14 April 1977. By then, required in-country clearance had been secured for witnesses in the United States and other necessary arrangements had been made for their travel to the trial situs in Turkey. At least one witness was scheduled to depart for Turkey on the day following the 8 April hearing in which the defense presented their motion for Captain Parry.

The accused's appointed defense counsel did not state they would be unprepared to represent the accused by the scheduled trial date. Although they had not consulted with Captain Parry about the case, the limited hearing we directed disclosed that his case file on the accused was available to and presumably in the possession of the

defense. In a related connection, we note that during the limited hearing Captain Parry stated his belief that the accused did not give him any information during their consultations that the accused would not have conveyed to other defense representatives. In light of the foregoing circumstances, and in further consideration of the substantial time, distance and financial factors involved, the military judge had a reasonable basis for his denial of the continuance. His ruling was not so "unfair as to constitute an abuse of discretion resulting in prejudice to the accused." *United States v. Massey*, supra, at 269; *United States v. Potter*, 14 U.S.C.M.A. 118, 33 C.M.R. 330 (1963).

As a final observation concerning both aspects of this assignment of error, we are satisfied that the accused's right to counsel of his choice was not lightly interfered with by the government. See *United States v. Eason*, supra. In passing, we note there is no indication in the record that the accused suffered any harm as a consequence of the denial of Captain Parry's services. His appointed counsel were obviously well prepared and performed in a superior manner in his behalf. See *United States v. Massey*, supra. Our consideration of the record convinces us that the accused was not wrongfully denied the effective assistance of counsel.

We find no merit in an unrelated assertion by appellate defense counsel that pretrial admissions by the accused concerning the fraudulent claim offense were inadmissible because the Air Force Office of Special Investigations (OSI) agents who interrogated him did not first afford his attorney, known to be representing him in connection with other criminal activity, a reasonable opportunity to be present.

In *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976), the United States Court of Military Appeals fashioned the rule that once an investigator is on notice that an attorney is representing an individual in a criminal investigation, Article 27 and 31 of the Uniform Code require that the attorney

be given an opportunity to be present during any questioning of his client. *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976), held that the rule applies even in situations where the interrogation involves a separate offense from the one concerning which the investigators are aware the individual is represented by counsel, as long as the offenses occurred within the same general area within a short period of time.

Here, in contrast with *McOmber* and *Lowry*, the record indicates that at the time the criminal investigators interrogated the accused concerning the fraudulent claim offense they had no notice he was represented by an attorney. They were only aware he had been represented by a military counsel in connection with a completed non-judicial punishment action concerning two other offenses. Although those offenses were earlier under investigation during the same approximate time period as the fraudulent claim infraction, they otherwise involved distinct and unrelated matters. Under the circumstances, the admissions made by the accused, following proper advice concerning his Article 31-Tempia[3] rights, were voluntary and admissible in evidence.

The remaining assertions of error, including the accused's request for a new trial on the basis of alleged newly discovered evidence, are either without merit or were thoroughly considered by the staff judge advocate in his review and properly resolved adversely to the accused.

For the reasons stated, the approved findings of guilty and the sentence are

AFFIRMED.

EARLY, Chief Judge, and ARROWOOD, Judge, concur.

---

3. *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).