**UNITED STATES, Appellee,**

v.

**Specialist Terry KELLEY, United States Army, Appellant.**

**ARMY 9600727.**

U.S. Army Court of Criminal Appeals.

29 May 1998.

For Appellant: Lieutenant Colonel Michael L. Walters, JA; Captain Thomas J. Barrett, JA (on brief).

For Appellee: Colonel Joseph E. Ross, JA; Lieutenant Colonel Frederic L. Borch III, JA; Captain Elizabeth N. Porras, JA; Captain Robert F. Resnick, JA (on brief).

Before GORDON, Senior Judge, JOHNSTON and SQUIRES, Appellate Military Judges.

## OPINION OF THE COURT

SQUIRES, Judge:

Contrary to his pleas, appellant was convicted of rape, unlawful entry (as a lesser-included offense of the charged burglary offense), and false swearing in violation of Arti-

cles 120, 130, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 930, and 934 (1988) [hereinafter UCMJ]. His adjudged sentence to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private E1 was approved by the convening authority.

### Facts

On the evening of 22–23 November 1995, Private First Class (PFC) R answered a knock at her barracks room door. Upon opening the door, she found a soldier whom she had seen earlier that evening but did not know by name. Within moments, this soldier unlawfully entered the room, assaulted PFC R, forced her to the bed, and raped her.

Several hours after the crime's commission, Criminal Investigation Command (CID) agents apprehended Specialist (SPC) Kelley in his barracks room. He was advised of his rights as required by Article 31(b), UCMJ, and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See also United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249, 1967 WL 4235 (1967). In particular, he was advised that he was suspected of raping PFC R. Appellant waived his rights and orally denied being in the barracks room where the rape occurred. He later modified that position and executed a sworn statement in which he contended, inter alia, that while sexual intercourse occurred, the victim never struggled to get away or said "no, stop, or quit."

On 7 December, appellant returned to the Fort Benning CID office, ostensibly to take a polygraph examination. Two CID agents, Davenport and Woolbert, who had not participated in questioning SPC Kelley on 23 November, advised appellant of his Article 31(b), UCMJ, and *Miranda* rights. Again he was advised that he was suspected of rape. Once again, he waived his rights. Neither agent regarded him as a suspect for the offenses of burglary or false swearing.

During the pre-polygraph test interview, SPC Kelley informed the agents that he had not been completely truthful in his 23 November statement. Because the agents were focused on the rape offense, they did not halt the interview to warn appellant that he was now suspected of false swearing. They did not question him about which parts of the 23 November statement were false. Appellant gave another written statement in which he essentially admitted to raping PFC R.

At trial, and on appeal, appellant asks that his 7 December statement be suppressed because he was not advised that he was suspected of burglary and false swearing. The military judge found that the two CID agents who interviewed SPC Kelley on 7 December had sufficient information to conclude that he was both a suspect for burglary and false swearing. However, the failure to advise appellant that he was suspected of these crimes, in addition to rape, did not render his 7 December statement involuntary or inadmissible. The military judge found that advising appellant that he was still suspected of rape oriented him to the particular incident and placed him on notice that he was still a suspect in a criminal investigation, despite his earlier (23 November) denial.

### Discussion

 Appellant's contention that his 7 December statement should have been suppressed because he was not warned about the burglary offense is without merit. "The purpose of informing a suspect or accused of the nature of the accusation is to orient him to the transaction or incident in which he is allegedly involved. It is not necessary to spell out the details of his connection with the matter under inquiry with technical nicety." *United States v. Rice*, 11 U.S.C.M.A. 524, 526, 29 C.M.R. 340, 342, 1960 WL 4513 (1960) (citing *United States v. Davis*, 8 U.S.C.M.A. 196, 24 C.M.R. 6, 1957 WL 4685 (1957)). Under the facts of this case, appellant knew that his unlawful entry into PFC R's room was part of his plan and immediately preceded the more serious crime of rape. *See United States v. Rogers*, 47 M.J. 135 (1997); *United States v. Willeford*, 5 M.J. 634 (A.F.C.M.R.1978).

 More troubling is the question of whether law enforcement officials must halt an interrogation to warn a subject that he or she is suspected of false swearing (or false official statement) when, as here: (a) the criminal conduct under investigation is something other than the falsity of a previous

statement; and (b) these officials do not engage in questioning the suspect about the falsity of a prior statement. We hold that Article 31(b), UCMJ, does not require that an interrogation be interrupted by renewed rights warnings if a suspect declares that previously furnished information was "less than truthful" or "false" when those questioning the suspect do not attempt to elicit inculpatory statements about the alleged falsity.

The Fifth Amendment of the U.S. Constitution states that no person "shall be compelled in any criminal case to be a witness against himself." "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (citing *Moran v. Burbine,* 475 U.S. 412, 422, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). It does not require a suspect's awareness of all the possible subjects of questioning in advance of interrogation. *Spring,* 479 U.S. at 574, 107 S.Ct. 851. It does not mandate that police give suspects any and all information that suspects could find helpful in deciding whether to remain silent or to speak. *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *Burbine,* 475 U.S. at 422, 106 S.Ct. 1135.

The procedural safeguards required by *Miranda, Tempia,* and Article 31(b) are designed to ensure that military service personnel have an unfettered choice of when to speak and when to remain silent during interrogation. Accordingly, suspects can waive their constitutional and statutory privileges when such waiver is "made voluntarily, knowingly and intelligently." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. Waivers may not be coerced.

> The inquiry [about whether a waiver is coerced] has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Burbine,* 475 U.S. at 421, 106 S.Ct. 1135 (quoting *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)). *See also United States v. Bubonics,* 45 M.J. 93 (1996) (citations omitted).

There is no allegation that SPC Kelley was intimidated or coerced on 7 December when he gave a written waiver of his rights. We find nothing so inherently coercive in a follow-up interrogation that would trigger a requirement that all such suspects be advised, pursuant to Article 31(b), UCMJ, that they are suspected of false swearing. Appellant implies that he was deceived by the CID agents because they did not advise him of all the crimes for which he should have been suspected, and for which he was subsequently charged and convicted. Accordingly, appellant claims he was somehow unaware of the full array of consequences associated with waiving his rights and volunteering information about the rape of which he was suspected. The totality of circumstances belies such assertion.

Appellant knew that he was returning to the CID office to take a polygraph test. This test would supposedly measure the truth or falsity of his earlier statement that the sexual intercourse was consensual. In short, SPC Kelley was "oriented" to the alleged rape and the possible consequences flowing from the crime. The CID agents did not deliberately or recklessly withhold information that appellant was suspected of burglary or false swearing. The record of trial is devoid of any physical or psychological pressure placed on SPC Kelley by the law enforcement agents. The interrogating agents were merely concerned with solving a reported rape. Finally, appellant was properly advised that *anything* he said could be used against him. *See Spring,* 479 U.S. at 577, 107 S.Ct. 851. It was not until Special Agent Davenport and appellant had been speaking for some time that SPC Kelley volunteered

that he had not been completely truthful in his 23 November statement.

To require military law enforcement officials to halt an interrogation under circumstances similar to those presented here, in order to advise a subject that he or she is now suspected of false swearing, could be "injurious to legitimate law enforcement" and "come at a substantial cost to society's legitimate and substantial interest in securing admissions of guilt." *Burbine,* 475 U.S. at 427, 106 S.Ct. 1135. Any such prophylactic rule would do little or nothing to prevent the evil of coerced statements, even in the military where the nature of our society requires constant vigilance against coerced self-incrimination. *See United States v. Duga,* 10 M.J. 206 (C.M.A.1981); *United States v. Armstrong,* 9 M.J. 374 (C.M.A.1980). *See also United States v. Raymond,* 38 M.J. 136, 139 (C.M.A.1993). Appellant made a free, rational choice to talk about the rape of which he was suspected. The military judge properly admitted the 7 December statement.

The findings of guilty and the sentence are affirmed.

Senior Judge GORDON * and Judge JOHNSTON concur.

* Senior Judge Jonathan C. Gordon took final action prior to his retirement.