*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Joseph R. NELSON**
Lieutenant Commander (O-4), U.S. Navy
*Appellant*

**No. 201900239**

Argued: 28 January 2021

Decided: 8 February 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Arthur L. Gaston III

Sentence adjudged 10 May 2019 by a general court-martial convened at Naval Support Activity Naples, Italy and Naval Station Norfolk, Virginia, consisting of members. Sentence approved by the convening authority: forfeiture of $7,596 pay per month for four months and a dismissal.[1]

---

[1] The convening authority's approval of the sentence contained the following caveats: (a) the duration of the adjudged forfeitures shall be reduced by five days per the military judge's ruling under R.C.M. 305(k), and (b) for any pay to which the adjudged forfeitures apply, the amount of the forfeiture applicable to such pay shall not exceed two-thirds of such pay.

For Appellant:
*Major Anthony M. Grzincic, USMC (argued)*

For Appellee:
*Lieutenant John L. Flynn, JAGC, USN (argued)*
*Lieutenant Jennifer Joseph, JAGC, USN (on brief)*
*Major Kerry E. Friedewald, USMC (on brief)*

Chief Judge MONAHAN delivered the opinion of the Court, in which Senior Judge STEPHENS and Judge DEERWESTER joined.

_____

**PUBLISHED OPINION OF THE COURT**

_____

MONAHAN, Chief Judge:

Appellant was convicted, contrary to his pleas, of unauthorized absence terminated by apprehension, conduct unbecoming an officer (cohabitating with known prostitutes and knowingly making a false statement regarding his active duty / mobilization status), and patronizing prostitutes, in violation of Articles 86, 133, and 134, Uniform Code of Military Justice [UCMJ].[2]

Appellant asserts four assignments of error [AOE]: (1) the military judge, after finding that the Naval Criminal Investigative Service [NCIS] violated Article 31(b), UCMJ, suppressed his statement as to one charged offense, but erroneously allowed the Government to introduce the statement at trial to prove the remaining offenses; (2) Charge III, Specification 2, failed to state an offense because the Government did not incorporate all the elements of Article 107, UCMJ, into the specification, but then relied on the missing elements to prove that the conduct was unbecoming an officer; (3) the Government failed to present legally and factually sufficient evidence with regard to the Article 133 offense in Charge III, Specification 2; and (4) the sentence was inappropriately severe. We ultimately find that there was legally insufficient evidence independent of a specific enumerated offense to sustain Appellant's Article 133 conviction charged in Charge III, Specification 2. Therefore, we set aside this conviction and reassess the sentence.

_____

[2] 10 U.S.C. §§ 886, 933, 934.

## I. BACKGROUND

In October of 2017, Appellant, a Navy Reservist, took active duty orders to Bahrain, to serve on the staff of Commander, U.S. Naval Forces Central Command [COMUSNAVCENT], for a year. During his time there, he patronized and eventually befriended several Thai prostitutes. When these women sought to escape their negative living situations, they moved in with Appellant and lived in his government-funded housing at various times over the course of several months. In exchange for not paying rent, the women cooked and cleaned for Appellant.

In January 2018, NCIS special agents interviewed Appellant as part of a prostitution and sex trafficking investigation in Bahrain. Although the agents provided Appellant an Article 31(b) rights advisement for patronizing prostitutes, they did not warn him that he was also suspected of failing to report the prostitution and sex trafficking-related misconduct of other Service Members. Throughout the interview, the agents downplayed the gravity of Appellant's personal misconduct and indicated they were more interested in using his information against other Service Members involved in sex trafficking. The interview lasted approximately two hours, and included two short breaks. The tenor of the interview was conversational and Appellant pushed back at various points when he disagreed with the agents' characterizations or implications that he was not telling the truth.

Immediately following his interview, NCIS searched Appellant's residence and found evidence that Thai prostitutes were living with him. Months later, in May 2018, NCIS again searched his residence and found evidence, to include a Thai woman hiding behind a bedroom door, that Appellant was still cohabitating with prostitutes.

Although Appellant was to remain in Bahrain through September 2018 on his original orders, he was redeployed early and was sent to the Navy Operational Support Center [NOSC] New York City in early May 2018, following the second search of his residence in Bahrain. From May to mid-June, Appellant reported to that command periodically in-person and completed regular phone musters with his chain of command, as required. However, once it became clear that he would be attached to the NOSC for a longer period than initially thought, Appellant's commanding officer, Captain (O-6) [CAPT] Sierra,[3] called him into her office on 15 June to discuss his com-

---

[3] All names in this opinion, other than those of the judges and counsel, are pseudonyms.

mencement of a regular, in-person work schedule. At that meeting, CAPT Sierra told Appellant to report the following Tuesday morning, 19 June, for what was to be his first full day of work. However, Appellant failed to report on that date, and then did not answer multiple phone calls and emails from CAPT Sierra and her executive officer. Still not hearing anything from Appellant, the following day CAPT Sierra completed a Dep't of Def., Form 553, Deserter / Absentee Wanted by the Armed Forces (Mar. 2015), declaring Appellant in an unauthorized absence status and filed a missing person's report with the New York Police Department. After receiving information from the police, CAPT Sierra declared Appellant a deserter on 21 June. Appellant's chain of command continued to attempt to make contact with Appellant via telephone and email until 9 July, when the United States Marshals Service apprehended Appellant at his apartment in New York City.

The Marshals Service brought Appellant to be detained at U.S. Army Garrison Fort Hamilton, New York. There, Appellant met Investigator [Inv.] India, a detective with the Department of the Army Police, who was responsible for facilitating the return of deserters and Service Members who were absent without leave to their respective Army installations or other Military Service. When Inv. India introduced himself to Appellant and told him that he was being detained on a deserter warrant, Appellant replied that he did not understand because he had already fulfilled his obligation and was no longer in an active duty status. Inv. India did not engage in further conversation with Appellant on the issue. Rather, he said that Appellant would need to take up his assertion with his unit that he was no longer on active duty.

## II. DISCUSSION

### A. Voluntariness Requirements and Article 31(b) Warnings

We review the denial of a motion to suppress under an abuse of discretion standard.[4] When considering a military judge's ruling on a motion to suppress under Article 31(b) we apply a clearly-erroneous standard of review to findings of fact and a de novo standard to conclusions of law.[5]

#### 1. Contours of voluntariness requirements and Article 31(b) Warnings

An involuntary statement of an accused, or evidence derived therefrom, is generally inadmissible at trial, provided the accused makes a timely motion

---

[4] *United States v. Simpson*, 54 M.J. 281, 283 (C.A.AF. 2000).

[5] *United States v. Norris*, 55 M.J. 209, 215 (C.A.A.F. 2001).

to suppress or other objection to its use.[6] Once the defense has made an appropriate motion or objection, the government bears the burden of establishing the admissibility of the evidence by a preponderance of the evidence.[7]

An "involuntary statement" is a statement "obtained in violation of the self-incrimination privilege or Due Process Clause of the Fifth Amendment, Article 31, or through use of coercion, unlawful influence, or unlawful inducement."[8]

Whether a statement is voluntary from a constitutional perspective requires an inquiry as to whether it was a product of an essentially free and unconstrained choice by its maker.[9] "If, instead, the maker's will was overborne and his capacity for self-determination was critically impaired, use of his confession would offend due process."[10] This inquiry involves an assessment of "the totality of the circumstances—both the characteristics of the accused and the details of the interrogation."[11] Factors to be examined in this regard include "rights warnings; the length of the interrogation; the characteristics of the individual including age and education; and the nature of the police conduct, including threats, physical abuse, and incommunicado detention."[12]

Article 31(b) prohibits interrogations of Service Members accused of a crime without first advising them of "the nature of the accusation."[13] The purpose of this rights advisement is to "orient the accused" to the nature of the offenses so as to allow him to intelligently weigh the consequences of responding to an investigator's inquiries.[14]

Sometimes, a suspect receives proper warnings under Article 31 with regard to one offense or incident but inadequate warnings as to another offense

---

[6] Mil. R. Evid. 304(a).

[7] Mil. R. Evid. 304(f)(6)-(7).

[8] Mil. R. Evid. 304(a)(1)(A).

[9] *United States v. Bubonics*, 45 M.J. 93, 95 (C.A.A.F. 1996).

[10] *Id.* (*quoting Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)).

[11] *Id.* (*quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

[12] *United States v. Sojfer*, 47 M.J. 425, 429-30 (C.A.A.F. 1998) (internal citations omitted).

[13] 10 U.S.C. § 831.

[14] *United States v. Reynolds*, 16 C.M.A. 403, 405 (C.M.A. 1966).

or incident. If the suspect subsequently makes an otherwise voluntary statement, military courts have held that although such a statement is inadmissible as to unwarned offenses, it is admissible vis-à-vis the warned offenses. Recently, in *United States v. Blanton*, in the context of resolving a claim of ineffective assistance of counsel, this Court held that where the appellant made inculpatory statements with regard to unwarned bribery allegations in addition to inculpatory statements to other, warned offenses, only his statements regarding the bribery allegations were inadmissible.[15] Similarly, in *United States v. Willeford*,[16] the appellant was warned by an Air Force Office of Special Investigations [AFOSI] agent that he was suspected of committing rape against a female Airman in her dormitory room, but was not warned of housebreaking and indecent exposure offenses with regard to another female Airman in the same dormitory, despite the fact that the AFOSI agent suspected Willeford had committed these other offenses. At trial, the military judge admitted the appellant's statements against him without limitation.[17] On appellate review, the Air Force Court of Military Review [AFCMR] held that the appellant's inculpatory statements concerning the housebreaking and indecent exposure offenses involving the non-rape victim were obtained in violation of Article 31 and, thus, inadmissible.[18] However, to remedy this violation of the appellant's rights, the AFCMR only set aside the appellant's convictions with regard to housebreaking and indecent exposure offenses, and did not disturb his convictions for rape and related offenses involving the other female Airman.[19]

*2. The military judge did not abuse his discretion by suppressing Appellant's statements as to one charged offense but allowing the Government to use it at trial to prove the remaining offenses to which the statement pertained*

In this case, the military judge found that Appellant's Article 31(b) rights were violated. Specifically, the military judge found that the warning provided by NCIS—that Appellant was suspected of patronizing prostitutes under Article 134—was insufficient to orient him toward the fact that he was suspected of the crime of conduct unbecoming for his failure to report the

---

[15] *United States v. Blanton*, 2019 CCA LEXIS 198, at *28 (N-M. Ct. Crim. App. May 8, 2019) (unpublished).

[16] 5 M.J. 634, 635 (A.F.C.M.R. 1978).

[17] *Id.* at 635.

[18] *Id.* at 636.

[19] *Id.* at 636-37.

prostitution and sex trafficking-related misconduct of others. Accordingly, the military judge ruled Appellant's statements inadmissible to prove that offense. Moreover, because the Government's proof for that offense relied upon Appellant's statements, the military judge dismissed the specification with prejudice.

However, the military judge also ruled that the warnings NCIS provided Appellant properly oriented him to other offenses of which he was later charged, to include the conduct unbecoming offense for cohabitating with known prostitutes and the patronizing prostitutes offense for which he now stands convicted. Therefore, the military judge permitted Appellant's un-redacted statements to NCIS to be admitted into evidence as evidence against him on those offenses.

Appellant argues on appeal that the military judge erred by suppressing his statements only as to the unwarned offense. He asserts that if an investigator warns a military suspect of some but not all offenses for which he is suspected, his statements must be suppressed as to all offenses. We disagree.

As an initial matter, we agree with the military judge, that but for the NCIS special agents' failure to warn Appellant that he was suspected of conduct unbecoming for his failure to report the prostitution-related activities of other Service Members, Appellant's statements to NCIS were otherwise voluntary under the totality of the circumstances. In reaching this conclusion, we adopt the military judge's findings of fact as our own.

The interrogation itself, including breaks, lasted less than two hours and was conversational throughout. The agents principally used rapport-building with Appellant as a means of getting him to talk, which is permissible under the law. Although the agents minimized at times and did confront and challenge Appellant, particularly during the second half of the interrogation, there is no indication that in doing so they overbore his will. To the contrary, throughout the interrogation, Appellant spoke intelligently and candidly, repeatedly demonstrating his ability to stand his ground and not provide further information even when confronted with the agents' stated belief that he was either lying or at least not being sufficiently forthcoming. A college educated, thirty-three-year old lieutenant commander with a background in finance as a civilian, Appellant stated multiple times during the interrogation that he had agreed to talk because he had nothing to hide, and his lucid, detailed admissions in no way suggested that he was simply parroting back words that the agents put in his mouth. The facts and circumstances revealed in the interrogation are in no way suggestive of psychological coercion or other factors amounting to unlawful influence or coercion. We therefore conclude, as did the military judge, that Appellant's admissions were the

product of an essentially free and his unconstrained choice, and were, thus, voluntary.[20]

Likewise, we find that the military judge did not abuse his discretion when he permitted Appellant's statements to be admitted as evidence against him with regard to offenses of which he was properly oriented.[21] Appellant's statements were voluntary with regard to both the Fifth Amendment Due Process Clause and Article 31(b) for these offenses. Thus, to hold that Appellant's statement must be suppressed as to these warned offenses would be to confer upon him an unwarranted windfall inconsistent with public policy.[22] Our holding on this issue is strengthened by this Court's recent, albeit unpublished, holding in *Blanton*[23] and the AFCMR's holding long ago in *Willeford*.[24]

## B. Charge III, Specification 2—Conduct Unbecoming for False Statement

### 1. Sufficiency of a specification generally

Whether a specification states an offense is a question of law, which we review de novo.[25] The military is a notice pleading jurisdiction.[26] A specification is sufficient if it "alleges every element of the charged offense expressly

---

[20] *See Bubonics*, 45 M.J. at 95 (*quoting Bustamonte*, 412 U.S. at 226).

[21] Appellant argues that, despite the military judge's curative action of dismissing the conduct unbecoming an officer specification related to his failure to report his knowledge of the prostitution and sex-trafficking related misconduct, the military judge abused his discretion by admitting Appellant's entire statement without excising inadmissible portions. Assuming arguendo that the military judge did err in this regard, we find any such error to be harmless under the facts and circumstances of this case. Specifically, because failure to report the misconduct of another is not *prima facie* evidence that Appellant had bad character or a criminal predisposition, we discern no prejudice to him with regard to the findings or sentence.

[22] "Voluntary confessions are not merely a proper element in law enforcement, they are an unmitigated good essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Maryland v. Shatzer*, 559 U.S. 98, 108 (2010).

[23] *See Blanton,* 2019 CCA LEXIS 198, at *28.

[24] *See Willeford,* 5 M.J. at 635-36.

[25] *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006).

[26] *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011).

or by necessary implication."[27] This rule encompasses the due process notice requirement.[28] Defective specifications implicate an accused Service Member's constitutional right to notice.[29]

"A charge and specification will be found sufficient if they, 'first, contain[ ] the elements of the offense charged and fairly inform[ ] the [accused] of the charge against which he must defend, and second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"[30]

Due process requires "fair notice" that an act is forbidden and subject to criminal sanction.[31] The Court of Appeals for the Armed Forces [CAAF] has found such notice in the *Manual for Courts-Martial* [*MCM*], federal law, state law, military case law, military custom and usage, and military regulations.[32] Due process also requires fair notice as to the standard applicable to the forbidden conduct.[33]

### 2. Changes to specifications

The Rule for Courts-Martial [R.C.M.] 603(a) provides that "[m]inor changes in charges and specifications are any except those which add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged."[34] The R.C.M. 603(a) Discussion clarifies what constitutes a minor change and includes, inter alia, "those [changes] necessary to correct inartfully drafted or redundant specifications; to correct a misnaming of the accused; to allege the proper article; or to correct other slight errors."

---

[27] R.C.M. 307(c) (3).

[28] *Folsler,* 70 M.J.at 229.

[29] *Id.* at 233.

[30] *Id.* at 229 (*quoting Hamling v. United States*, 418 U.S. 87, 117 (1974)).

[31] *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003).

[32] *Id.*

[33] *Parker v. Levy*, 417 U.S. 733, 755 (1974); *Vaughan*, 58 M.J. at 31.

[34] R.C.M. 603(a).

In *United States v. Reese*, CAAF reiterated that a change is minor so long as "no additional or different offense is charged . . . and if substantial rights of the [accused] are not prejudiced."[35] The court went on to enunciate:

> The first prong usually is satisfied if the charge is altered to allege a lesser-included offense . . . .
>
> . . . The second prong is satisfied if the amendment does not cause unfair surprise. The evil to be avoided is denying the [accused] notice of the charge against him, thereby hindering his defense preparation.[36]

*3. Article 133*

Article 133 contains two elements: (1) that the accused did or omitted to do certain acts; and (2) that under the circumstances, these acts or omissions constituted conduct unbecoming an officer and a gentleman.[37]

The focus of Article 133 is the effect of the accused's conduct on his status as an officer, cadet, or midshipman:

> [T]he essence of an Article 133 offense is not whether an accused officer's conduct otherwise amounts to an offense . . . but simply whether the acts meet the standard of conduct unbecoming an officer. . . . [T]he appropriate standard for assessing criminality under Article 133 is whether the conduct or act charged is dishonorable and compromising . . . this notwithstanding whether or not the act otherwise amounts to a crime.[38]

Article 133 can cover "acts made punishable by any other article, provided these acts amount to conduct unbecoming."[39] Whenever the offense charged is the same as a specific enumerated offense charged in the *MCM*, the elements of proof are the same for that specific offense plus proof that the conduct was

---

[35] 76 M.J. 297, 300 (C.A.A.F. 2017) (quoting *United States v. Sullivan*, 42 M.J. 360, 365 (C.A.A.F. 1995)) (ellipsis in original).

[36] *Id.* (quoting *Sullivan*, 42 M.J. at 365) (ellipses in original).

[37] *MCM*, pt. IV, para. 59.b. (2016 ed.).

[38] *United States v. Conliffe*, 67 M.J. 127, 132 (C.A.A.F. 2007) (*quoting United States v. Giordano*, 35 C.M.R. 135, 140 (C.M.A. 1964)).

[39] *MCM*, pt. IV, para. 59.c(2).

unbecoming.[40] On the other hand, the underlying act or omission does not have to independently amount to an offense.[41] Rather, "the appropriate standard for assessing criminality under Article 133 is whether the conduct or act charged is dishonorable and compromising . . . notwithstanding whether or not the act otherwise amounts to a crime."[42] Moreover, Article 133 is not subject to the preemption doctrine in the way that Article 134 offenses are.[43]

For a conviction under Article 133 to stand on its own apart from a specific enumerated offense, "the government must present a theory of liability at trial and prove how the conduct exceeded the 'limit of tolerance based on customs of the service,' *MCM*, pt. IV, ¶ 59.c.(2) notwithstanding—that is, independent of—whether it constituted a specific [enumerated] offense."[44]

*4. The Article 133 offense at issue stated an offense, but the evidence was legally insufficient to prove that Appellant's conduct was unbecoming notwithstanding whether it amounted to a specific enumerated offense*

During pre-trial motions, Appellant moved to dismiss an Article 133 specification for failure to state an offense–knowingly making a false statement to Inv. India. He argued the specification only partially incorporated the Article 107 offense, because it omitted elements that the statement was official and that it was made with the intent to deceive. This motion appeared to directly address the position taken by the Government at an earlier motion session during which a Defense motion to dismiss for multiplicity / unreasonable multiplication charges was litigated. During that earlier motion session, the Government asserted that the Article 133 specification at issue intended to incorporate all the elements of the Article 107 offense.

However, in the face of this logical argument by the Defense that the Article 133 offense as charged did not include all the elements of an Article 107 false official statement offense, the Government appeared to change its charged theory of criminality with regard to the Article 133 false statement offense. Specifically, the trial counsel argued in response that this specifica-

---

[40] *Id.*

[41] *United States v. Livingstone*, 78 M.J. 619, 624 (C.G. Ct. Crim. App. 2018).

[42] *United States v. Schweitzer*, 68 M.J. 133, 137 (C.A.A.F. 2009) (quoting *Giordano*, 35 C.M.R. at 140.)

[43] *MCM* pt. IV, para. 60.c(5)(a); *see also United States v. Taylor*, 23 M.J. 314, 318 (C.M.A. 1987).

[44] *Livingstone*, 78 M.J. at 624-25.

tion was not designed to mirror Article 107. Rather, he asserted it was charged in this manner to account for contingencies of proof with respect to the charged Article 107 offense. The military judge denied Appellant's motion. Appellant was subsequently convicted of this Article 133 offense but was acquitted of the Article 107 offense arising from the same act.

On appeal, Appellant argues that the Government's theory at trial relied on incorporated elements from Article 107, contrary to its assertions during the motions session that addressed this issue. Specifically, Appellant argues that because "the [G]overnment disclaimed the conduct's 'official nature' and the 'intent to deceive,' the [D]efense was led to believe the conduct was unbecoming in *some other way*."[45] Moreover, Appellant asserts that at trial, "the [G]overnment relied on the official nature of the statement, and deceptive intent in proving the conduct was unbecoming," and thus, he was not on notice of the nature of the Article 133 offense.[46]

As an initial matter, the specification at issue was charged as follows:

> In that [Appellant], U.S. Navy, Naval Operational Support Center, New York City, on active duty, did on or about 9 July 2018, at or near United States Army Garrison, Fort Hamilton, New York, make to Investigator [India], a statement, to wit: that the said [Appellant] was not on active duty and had completed his mobilization, or words to that effect, which statement was false, and was then known by the said [Appellant] to be so false, and that under the circumstances, these acts and omissions constituted conduct unbecoming an officer.[47]

Written as such, the specification stated an offense on its face, because it alleged (1) that Appellant did a certain act; and (2) that under the circumstances, this act constituted conduct unbecoming an officer and a gentleman.[48] Although the Government initially advanced a different theory of criminality embodied by the Article 133 conduct unbecoming specification, before trial it ultimately espoused the theory that is reflected by the words of the specification itself. Specifically, the Government settled on the theory that the specification at issue was not intended to directly mirror the Article

---

[45] Appellant's Br. at 33 (emphasis in the original).

[46] *Id.*

[47] Charge Sheet, Charge III, Specification 2.

[48] *See MCM* pt. IV, para. 59.b.

107 false official statement offense on the charge sheet, but rather was charged to account for contingencies of proof with respect to that specific offense. Thus, as a matter of law, it was not necessary for the Government to include all the elements of the Article 107 offense in the Article 133 specification to properly state an offense. At most, the Government's shifting of theories of criminality constituted a permissible minor change.

Before trial, the Government did inform the trial Defense team that the Article 133 offense was meant to account for contingencies of proof with regard to the Article 107 offense. Specifically, in its written response to the Defense's Motion to Dismiss for Failure to State an Offense, the Government asserted,

> [U]nder [*United States v. Livingstone*, 78 M.J. 619 (C.G. Ct. Crim. App. 2018)] the Government here must simply show that lying to a criminal investigator in some "unofficial" capacity violates a reasonably-known standard of conduct that would place an officer on notice of the criminality of his actions.[49]

However, we agree with Appellant that, when the Government presented its case to the members with regard to the specification at issue, it relied on the "officiality" of his statement to establish a reasonably known standard based on service customs or standards of conduct. During closing argument on findings to the members, trial counsel stated:

> And for Charge III, Specification 2, the same conduct, it's up to you to decide whether that conduct, whether making a false statement to an investigator in their official duties as a detective, whether that is conduct unbecoming an officer, an O-4, a commanding officer of a unit, perhaps formerly a commanding officer of a unit at that time, whether that is conduct that is unbecoming an officer, disgracing of that officer's position.[50]

Moreover, in rebuttal argument, trial counsel relied on both the officiality of the statement and that it was made with the intent to deceive, when he stated, "[T]he only point of failure here is the Accused lying to a military investigator in a manner that was both official and with intent to deceive and

---

[49] App. Ex. XXI at 4.

[50] R. at 886.

in a manner that is unbecoming of a lieutenant commander in the United States Navy."[51]

Thus, the manner in which the Government presented its case to the members on Charge III, Specification 2, was contrary to the Coast Guard Court of Criminal Appeals' holding in *United States v. Livingstone*, which we adopt as our own, with regard to legally sufficient evidence that must support an Article 133 offense that does not constitute a specific enumerated offense. If the Government's theory of liability or proof did not rely on the underlying conduct also constituting the specific offense of false official statement under Article 107, then the evidence must support that Appellant's conduct was unbecoming—standing alone and independent of whether it constituted the specific offense of false official statement.[52] When testing for legal sufficiency, we look at "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[53]

Here, there must be legally sufficient evidence that (1) Appellant did a certain act, that is, made a false statement to Investigator India concerning his active duty and mobilization status; and (2) under the circumstances, this act constituted conduct unbecoming an officer and a gentleman.[54] Further, to pass constitutional muster, Appellant must have reasonably known, based on service customs or standards of conduct, that this act was punishable.[55] That custom or standard too must stand on its own without regard to whether the conduct also amounts to any specific offense.[56]

Even viewed in the light most favorable to the Prosecution, we conclude that the evidence fails to establish that Appellant's conduct was unbecoming independent of whether it amounted to false official statement. It would not be hard to imagine how his conduct would have been unbecoming if Appellant's statement to Inv. India was both official and made with the intent to deceive. But if we remove consideration of whether Appellant's conduct

---

[51] R. at 921-22.

[52] *Livingstone*, 78 M.J. at 626.

[53] *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Robinson*, 77 M.J. 294, 297-98 (C.A.A.F. 2018)

[54] *MCM*, pt. IV, para. 59.b.

[55] *Livingstone*, 78 M.J. at 626.

[56] *Id.*

amounted to the offense of false official statement, in our view, no readily identifiable service custom or standard of conduct remains to sustain his conviction. Certainly, the Government, at trial, never clearly articulated to either the military judge or the members an independent service custom or standard of conduct as its basis.

We agree with the premise raised by the Government at oral argument before us that under certain factual scenarios, an officer's conduct is obviously subject to punishment under Article 133. For instance, in *United States v. Rogers*, CAAF held that in the context of an O-5 squadron commander engaging in an unprofessional relationship with his squadron's O-2 intelligence officer while on deployment in a foreign country, any officer would be on notice that the conduct at issue was punishable.[57] Here, however, it is nowhere as clear that Appellant's statement to Inv. India, if not official and not made with the intent to deceive, violated service customs or standards of conduct. Therefore, the Government's reliance on *Rogers* is inapt.

In sum, the Government charged the Article 133 offense brought under Charge III, Specification 2 without incorporating all the elements of false official statement under Article 107, and did not clearly articulate what service custom or standard of conduct Appellant violated without relying on Article 107 itself [of which Appellant was acquitted]. Moreover, the conduct charged in the Article 133 offense, minus the elements of officiality and intent to deceive, is not of a type that is obviously punishable. Therefore, we conclude that there is legally insufficient evidence that Appellant's conduct was unbecoming notwithstanding whether it amounted to a specific enumerated offense. We thus set aside the finding of guilty to this specification.

## C. Sentence Reassessment & Sentence Appropriateness

### 1. Sentence reassessment

Having set aside the guilty finding to Charge III, Specification 2, we must determine if we can reassess the sentence "more expeditiously, more intelligently, and more fairly than a new court-martial."[58] In reassessing sentences, we "act with broad discretion."[59]

---

[57] 54 M.J. 244, 257 (C.A.A.F. 2000).

[58] *United States v. Wincklemann*, 73 M.J. 11, 15 (C.A.A.F. 2013) (internal quotation marks omitted).

[59] *Id.*

So long as we are able to determine that the sentence imposed on Appellant, absent the error, would have been at least of a certain magnitude and no higher than he would have received without the error, we may reassess the sentence.[60] Any sentence we seek to affirm must be "appropriate," meaning it is not only "purged of prejudicial error [but] also . . . 'appropriate' for the offense involved."[61]

We look to the non-exclusive list of five factors in *Winckelmann* to determine whether to reassess a sentence or to order a sentencing rehearing: (1) whether there has been a dramatic change in the penalty landscape and exposure; (2) the forum of the court-martial; (3) whether the remaining offenses capture the gravamen of the criminal conduct; (4) whether significant aggravating circumstances remain admissible and relevant; and (5) whether the remaining offenses are the type with which we as appellate judges have experience and familiarity to reasonably determine what sentence would have been imposed at trial.[62]

Under all the circumstances presented, we find that we can reassess the sentence and it is appropriate for us to do so. There is only a marginal change in the penalty landscape and exposure as the maximum punishment for confinement has been reduced from three years and six months to two years and six months. Appellant was sentenced by members. The remaining offenses capture the gravamen of the criminal conduct for which Appellant was sentenced, and there is little change in admissible sentencing evidence. Additionally, we have significant experience and familiarity with the offenses that remain and conclude that sentence reassessment is appropriate.

Absent the error, we are confident that the court-martial would have imposed a sentence no higher than forfeiture of $6,596 pay per month for four months and a dismissal.

*2. Sentence appropriateness*

With regard to sentence appropriateness, Appellant argues that dismissal is an inappropriately severe punishment in light of the nature of the misconduct and his military record. In making our sentence appropriateness determination, he also asks us to take into account that he did not receive any credit for the 305 days he served in pre-trial confinement.

---

[60] *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000).

[61] *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

[62] *Winckelmann*, 73 M.J. at 15-16.

In making our determination, we take into account Appellant's service and personal circumstances, to include his meritorious period of twelve years of service with no history of misconduct. However, in addition to patronizing multiple foreign prostitutes while stationed overseas and assigned to the staff of COMUSNAVCENT, Appellant engaged in conduct unbecoming an officer by cohabitating with various foreign prostitutes over a several month period at his government-funded residence in Bahrain. Although his motives in allowing the prostitutes to live with him may have been mainly altruistic, after being put on notice in January 2018 that his conduct in this regard was under law enforcement scrutiny, he persisted in living with the prostitutes until May 2018.

After his orders were cut short in Bahrain following allegations that he had committed misconduct there, Appellant was returned to NOSC New York. After Commanding Officer, NOSC New York, told him that he would need to begin a regular, in-person work schedule, Appellant, a lieutenant commander, began an approximately three week period of unauthorized absence that was terminated only when he was apprehended by the United States Marshals Service executing an absentee warrant that had been issued by his command.

Considering all the circumstances, we determine that Appellant's sentence as reassessed, to include his dismissal, to be appropriate. In making this determination, we are mindful that he served 305 days of pre-trial confinement for which he did not receive any formal credit. However, the military judge instructed the members that Appellant had already served over 300 days in pretrial confinement.[63] Because the members did not adjudge any confinement, we infer that they did consider Appellant's pre-trial confinement when they determined his sentence, just as we—in reassessing the sentence—took it into consideration.

## III. CONCLUSION

The finding of guilty to Charge III, Specification 2, is **SET ASIDE** and that specification is **DISMISSED WITH PREJUDICE**. After careful consideration of the record and briefs of the appellate counsel, we have determined that, following our corrective action, the remaining findings and only so much of the sentence that includes forfeiture of $6,596 pay per month for four months and a dismissal are correct in law and fact and that no error materi-

---

[63] R. at 1005.

ally prejudicial to Appellant's substantial rights remains.[64] Accordingly, the remaining findings and sentence as reassessed by this Court, are **AFFIRMED**.[65]

Senior Judge STEPHENS and Judge DEERWESTER concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[64] UCMJ arts 59, 66.

[65] The following caveats contained in the convening authority's approval of the sentence still apply: (a) the duration of the adjudged forfeitures shall be reduced by five days per the military judge's ruling under R.C.M. 305(k), and (b) for any pay to which the adjudged forfeitures apply, the amount of the forfeiture applicable to such pay shall not exceed two-thirds of such pay.